Edna **JOHNSON**, et al., Plaintiffs,

v.

Louis W. **SULLIVAN**, M.D., Secretary of Health and Human Services, Defendant.

No. 83 C 4110.

United States District Court, N.D. Illinois, E.D.

June 16, 1989.

Joseph A. Antolin, John Bouman, Robert E. Lehrer and Julie A. Nice, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Anton R. Valukas, U.S. Atty. by Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., and Donna Fuchsluger, General Counsel's Office, Social Security Admin., Baltimore, Md., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiffs, a group of unsuccessful applicants for federal disability benefits, filed this class action suit against the Secretary of Health and Human Services ("Secretary") in 1983. For six years, plaintiffs and the Secretary have waged an acrimonious legal war over the propriety of certain regulations governing the evaluation of federal disability claims. Plaintiffs won the opening battles in this court in 1983 and 1984, obtaining both class certification and summary judgment. 593 F.Supp. 375 (N.D.Ill.1984) (summary judgment); 100 F.R.D. 70 (N.D.Ill.1983) (class certification). In the months that followed, the Secretary persistently attacked the composition of the *Johnson* class and the merits of plaintiffs' claims. Despite these attacks, this court refused to retreat from its original rulings. 607 F.Supp. 87585122480 (N.D.Ill.1984) (denying motion to alter or amend); 604 F.Supp. 1070 (N.D.Ill.1985) (denying motion for stay of injunctive relief). The parties then resumed their legal combat on an appellate battleground. In the initial appellate skirmish, plaintiffs prevailed; the Sev-

enth Circuit affirmed this court's rulings in all respects. 769 F.2d 1202 (7th Cir.1985). The Secretary, however, achieved a limited victory over the *Johnson* class in the Supreme Court. In light of its recent decision in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Court vacated the Seventh Circuit's judgment in *Johnson,* remanding the case to the Court of Appeals for further consideration. 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987). The Seventh Circuit in turn remanded the *Johnson* case to this court.[1] After assessing the impact of the *Yuckert* ruling, this court modified its previous award of injunctive relief to the *Johnson* class. Convinced that this modified award represented "a final determination of the appropriate remedy in this case," the court entered final judgment for plaintiffs in an order dated October 6, 1988. 697 F.Supp. 346, 354 (N.D.Ill.1988).

The court hoped in vain that its latest order would bring an end to the hostilities between the *Johnson* class and the Secretary. Unfortunately, the order of October 6, 1988 produced only a temporary cease-fire. Shortly thereafter, when the parties began to discuss the details of implementing the court-ordered relief, negotiations quickly reached an impasse. Unable to agree on the proper scope of relief, the parties asked the court to mediate their conflict over certain provisions of the amended judgment order proposed by plaintiffs. The Secretary then escalated the tension between the parties by firing a late volley at plaintiffs: a challenge to the composition of the class based on a recent Supreme Court decision. Angered by this assault on the class, plaintiffs counterattacked by filing a motion for Rule 11 sanctions. These recent developments require the court to step once more into the breach that separates the parties. In its continu-

ing efforts to bring some measure of peace and conciliation to this bitter and contentious litigation, this court will now consider the parties' competing motions for entry of an amended judgment order, the Secretary's motion for reconsideration of class certification, and plaintiffs' motion for Rule 11 sanctions.

### I. Amended Judgment Order

In the weeks following this court's order of October 6, 1988, the parties began to negotiate the specific details of implementing the court-ordered relief. Two months later, plaintiffs and the Secretary jointly moved to vacate the October 6 order insofar as it purported to be a final judgment. The court granted this motion based on the parties' assurances that they were attempting to agree on an amended judgment order that would better define the Secretary's obligations in implementing relief.

Despite the divisiveness that has pervaded this litigation, plaintiffs and the Secretary have managed to agree on a procedural framework for providing relief to the *Johnson* class.[2] Nonetheless, the parties remain deeply divided over certain substantive provisions of plaintiffs' proposed judgment order. The Secretary urges the court to amend the provisions in question; but plaintiffs strenuously object to the Secretary's proposed amendments. In order to fashion an amended judgment order, the court must choose between the conflicting provisions proposed by the parties. To achieve this purpose, the court will now examine the sections of plaintiffs' proposed order that have stalemated the parties' settlement negotiations.

A. *Subparagraphs 1(k) and 1(l): The Definitions of "Redetermination" and "Retroactive Benefits"*

In entering judgment for the *Johnson* class, this court concluded that the Secre-

---

1. For a more detailed discussion of the elaborate procedural history of this case, see *Johnson v. Bowen,* 697 F.Supp. 346, 347–50 (N.D.Ill. 1988).

2. The parties have also agreed to amend subparagraph 1(a) of plaintiffs' proposed judgment order, changing the phrase "practices applied" to "policies." This change is intended to reflect the court's own language in the class certifica-

tion order. *See Johnson v. Heckler,* 100 F.R.D. 70, 72 (N.D.Ill.1983). In addition, while their motions for amended judgment were pending, the parties recently agreed to revise paragraphs 3, 4(a) and 4(b)(i) of the proposed implementation order. The judgment order entered by this court will incorporate all of the amendments to which the parties have agreed.

tary had improperly refused to consider the combined effect of nonsevere impairments when evaluating plaintiffs' disability claims. 697 F.Supp. at 352–53. The court ordered the Secretary to conduct "new disability hearings for class members—hearings that provide for consideration of the combined effect of all impairments." *Id.* at 354. While they agree on certain procedures for arranging and administering such hearings, plaintiffs and the Secretary vehemently disagree about the scope of the new hearings. The Secretary maintains that he need only redetermine each class member's eligibility for benefits as of the date the class member's claim was originally denied. According to the Secretary, if a class member does not qualify for benefits as of the date his claim was initially rejected, that class member cannot receive benefits for a subsequent disability unless he files a separate application. Plaintiffs contend, however, that the Secretary cannot properly restrict his review of the *Johnson* claims to the time period preceding the original denial of those claims. Plaintiffs argue that the Secretary must also determine whether each class member became disabled at any time since the initial denial of benefits. Under plaintiffs' proposed scheme, a class member who was not eligible for benefits when his claim was first rejected could nonetheless recover retroactive benefits from the onset date of a subsequent disability—even if he did not file a second application for benefits.

Due to their fundamental differences over the proper scope of the new hearings, the parties have proposed divergent definitions of "redetermination" and "retroactive benefits" (subparagraphs 1(k) and 1(*l*) of plaintiffs' proposed judgment order). This definitional dispute represents the major bone of contention at this point in the litigation. Regrettably, despite the significance of this issue, most of the parties' arguments offer this court little guidance in deciding the appropriate scope of the Secretary's redeterminations. For instance, in a disingenuous declaration of righteous indignation, plaintiffs insist that the court's prior orders already require the Secretary to award benefits to class members whose disability postdates the original denial of their claims. This argument is totally specious. Quite frankly, until the parties raised the issue at this juncture, this court had not even considered whether the Secretary's reconsideration of a class member's impairments should encompass the entire period from the date of the class member's original application to the date of his rehearing. By suggesting that the court already resolved this issue, plaintiffs are merely engaging in legal ventriloquism, trying to put words into the court's mouth. With all due respect, the court has no intention of playing Charlie McCarthy to plaintiffs' Edgar Bergen.

Likewise, this court will not play the ventriloquist when interpreting the orders of other courts, finding a "judicial analysis" of the scope of redetermination where none previously existed. In seeking to settle their dispute over the scope of redetermination, both parties to this litigation have invited the court to consult other cases involving successful class action challenges to Social Security regulations. For the most part, however, the "case law" cited by the parties consists of terse judgment orders that offer no particular rationale for the scope of redetermination defined by the presiding courts. In fact, these orders provide no evidence that the courts gave any thought to the conflicting visions of redetermination and retroactivity espoused by the parties in the instant case. Devoid of any detailed analysis, these judgment orders do not assist this court in drawing the boundaries of the redetermination period.

■ Of all the cases cited by the parties, only one case analyzes the redetermination issue as the parties have framed it. In his recent order in *Marcus v. Sullivan,* No. 85 C 453, 1989 WL 39709 (N.D.Ill. Apr. 17, 1989), Judge Moran confronted the same issue concerning the scope of redetermination that this court currently faces. Like the *Johnson* class members, plaintiffs in *Marcus* successfully challenged a Social Security regulation on which the Secretary had relied when denying plaintiffs' disability claims. *See Marcus v. Bowen,* 696

F.Supp. 364 (N.D.Ill.1988). Judge Moran then ordered the Secretary to redetermine the claims of *Marcus* class members. As in the instant case, plaintiffs in *Marcus* argued that the Secretary should reconsider each disability claim for the entire period from the date of a class member's original application to the date of the redetermination. Meanwhile, the Secretary contended that he should only have to reassess each *Marcus* plaintiff's claim as of the date the plaintiff's claim was initially rejected. After weighing these alternatives, Judge Moran adopted the *Marcus* plaintiffs' proposed scope of redetermination. He reasoned that the Secretary's regulatory scheme dictated the sort of comprehensive redetermination advocated by plaintiffs. Pursuant to 20 C.F.R. §§ 404.620 & 416.330, a disability claim under Title II or Title XVI of the Social Security Act remains in effect until the Secretary makes a final determination or until an administrative law judge renders a decision following a disability hearing. By entering summary judgment for the *Marcus* plaintiffs, Judge Moran vacated the Secretary's previous resolution of all class members' claims. Because the *Marcus* plaintiffs have yet to receive a final determination on their applications, Judge Moran concluded that class members' claims continue to remain in effect until the Secretary makes a redetermination of eligibility.

This court concurs in Judge Moran's analysis of the Secretary's regulations. Like the *Marcus* plaintiffs, members of the *Johnson* class have never received a final determination on their disability claims. In the case of each class member, the Secretary's purported "final determination" rested on a regulation that this court has subsequently invalidated. Until the Secretary makes a proper final determination on plaintiffs' claims, the Secretary's regulations mandate that those claims remain very much alive. Thus, in accordance with his own regulations, the Secretary must assess each class member's eligibility for benefits right up to the time of the new disability hearing.

The Secretary contends that the sweeping redeterminations proposed by plaintiffs will provide a windfall to class members who were not entitled to benefits at the time their claims were originally denied. Under plaintiffs' proposal, these class members could recover benefits for subsequent disabilities without filing separate applications. In light of this prospect, the Secretary asserts that plaintiffs' scheme effectively exempts class members from a nonwaivable jurisdictional requirement: the filing of a written application each time benefits are requested. See 42 U.S.C. § 405(g); *Bowen v. City of New York*, 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976)). This argument ignores the fact that an applicant need not file a new application while his previously filed disability claim awaits a final determination. *See* 20 C.F.R. §§ 404.620, 416.330 (1988). With their original claims still pending, plaintiffs do not have to file new applications for benefits. The Secretary's regulations entitle each class member to a complete evaluation of her impairments since the filing of her initial application.

Frankly, the scope of redetermination advocated by plaintiffs does not represent a novel or extraordinary departure from past practice. Administrative law judges routinely perform such comprehensive redeterminations when reconsidering individual disability claims remanded by the district courts. Two factors distinguish the instant case from the typical Social Security remand: the length of this litigation and the size of the class. In the course of implementing relief to the *Johnson* class, the Secretary faces the unenviable task of reconsidering thousands of disability claims spanning several years. Undoubtedly, the court could ease this substantial administrative burden by adopting the Secretary's narrow definition of redetermination. Considerations of administrative convenience, however, do not justify restricting the scope of redetermination in a manner that contravenes the Secretary's own regulations. Because plaintiffs may have reasonably relied on those regulations, acceptance of the Secretary's definition of redetermi-

nation could result in serious inequities. Consider the plight of a class member who was not disabled at the time his claim was initially denied, but who became disabled in 1985. Based on his reading of Social Security regulations and his knowledge of this litigation, this class member could reasonably have believed that he did not need to file a separate application for a subsequent disability because his original application remained in effect. Rather than file another application, he simply awaited the implementation of the court-ordered relief in *Johnson,* justifiably expecting that he would receive the sort of comprehensive redetermination described in plaintiffs' amended judgment order. Under the Secretary's circumscribed approach to redetermination, this class member would suffer a severe penalty for relying on the Secretary's regulations. Unless he had filed a separate application, the class member could not receive benefits for a disability that postdated the original denial of his claim; yet the regulations indicated that he would not have to submit a subsequent application. As a result of his reliance on these regulations, the class member would lose any opportunity to receive benefits for a period of several years during which he was disabled.[3] Thus, this court's adoption of the Secretary's redetermination scheme would unjustly punish class members who legitimately believed that their original claims remained in effect throughout this litigation.

Ultimately, the Secretary has offered no compelling justification for deviating from his regulations concerning the scope of redetermination.[4] In accordance with those regulations, the Secretary must reconsider each class member's claim for the entire time period from the date of the original application to the date of the new disability hearing. For this reason, the court adopts plaintiffs' definitions of "redetermination" and "retroactive benefits."

### B. *Paragraph 4: "Reopening if Necessary"*

Paragraph 4 of plaintiffs' proposed judgment order states that "the Secretary shall make redeterminations (reopening if necessary) of the claims of all ... responding claimants who are determined to be redetermination class members." The Secretary asks the court to strike the parenthetical phrase "reopening if necessary" from paragraph 4. Apparently, the Secretary's aversion to this language stems from his interpretation of the terms "redetermination" and "reopening." According to the Secretary, a "redetermination" involves reconsideration of a claim as of the date the claim was initially denied, whereas a "reopening" entails the analysis of a claimant's eligibility for the entire time period since he filed a disability claim. Although the Secretary characterizes "redetermination" and "reopening" as terms of art, he fails to cite a single case where a court expressly adopted his definitions of these terms. Moreover, this court does not share the Secretary's interpretation of the words "redetermine" and "reopen." In its 1985 judgment order, the court directed the Secretary to "redetermine (reopening if necessary)" the claims of all class members. 604 F.Supp. at 1076. This directive simply required the Secretary to redetermine whether plaintiffs' claims survived step two of the sequential evaluation process for determining disability. If the Secretary concluded that a *Johnson* claim satisfied the step two requirements, then he would necessarily have to reopen the claim by proceeding to the next step of the sequen-

---

**3.** Although the class member could file a new application for benefits at this time, such an application would not provide for the full range of retroactive benefits from the onset date of the class member's disability. A Title II claimant may only receive retroactive benefits up to 12 months prior to the date of his application. 20 C.F.R. § 404.621. A Title XVI applicant cannot recover retroactive benefits at all; he may only receive benefits as of the date of his application. 20 C.F.R. § 416.335.

**4.** Perhaps, as the Secretary has contended, these regulations did not anticipate the sort of extensive retroactive relief that might emanate from class action litigation. Nonetheless, in the absence of explicit regulatory provisions governing class actions, the Secretary must redetermine class members' claims in the same manner that he would reconsider an individual disability claim on remand from a district court.

tial evaluation process.[5] Based on this understanding of its previous order, this court can conceive of no plausible objection to the use of the term "reopening" in an amended judgment order. Therefore, the court declines to strike the phrase "reopening if necessary" from paragraph 4 of plaintiffs' proposed order.

### C. *Subparagraph 4(e)(ii): The Timetable for Completing Redeterminations and the Secretary's Authority over State Agencies*

■ The parties cannot agree on a timetable for completing the court-ordered redeterminations. In subparagraph 4(e)(ii) of their proposed order, plaintiffs assert that the Secretary should complete the redeterminations at an average rate of 1000 per month for the two-year period commencing 60 days after the mailing of class notices. If he must make the comprehensive redeterminations prescribed by plaintiffs, however, the Secretary contends that a monthly average of 1000 redeterminations represents an onerous and unrealistic goal. Based on the court's adoption of plaintiffs' proposed scope of redetermination, the Secretary urges the court to reduce the average monthly requirement from 1000 to 800 redeterminations. He admits that he previously considered 1000 redeterminations a reasonable monthly rate; but he based this projection on his restrictive interpretation of the scope of redetermination. Now that the court has adopted the broader scope of redetermination proposed by plaintiffs, each redetermination will take more time to complete than the Secretary had originally anticipated. Consequently, the Secretary will be unable to complete as many redeterminations per month as he had originally estimated. The Director of the Illinois Bureau of Disability Determination Services ("BDDS") confirms that the sort of comprehensive redetermination endorsed by plaintiffs would significantly increase the Secretary's administrative burden. *See* Deposition of Jack Bell, Dec. 7, 1988, at 141–42. In light of this increased burden, the court grants the Secretary's request

for a reduction in the rate of redetermination. The court shall require the Secretary to implement relief at an average rate of 800 redeterminations per month.

In a further effort to ensure the expeditious implementation of relief, plaintiffs' proposed subparagraph 4(e)(ii) prohibits the Secretary from sanctioning the BDDS or other state agencies "for any delay occasioned in adjudicating cases (of individuals who are not redetermination class members) as a result of their effort to comply with the time guidelines of this subparagraph." This court, however, sees no need for such a pervasive intrusion into the Secretary's management of his caseload. The court's establishment of a time frame for the completion of redeterminations sufficiently ensures the prompt implementation of relief. Therefore, at the Secretary's behest, the court strikes the language in subparagraph 4(e)(ii) that would limit the Secretary's authority to sanction state agencies.

### D. *Paragraph 6: The Secretary's Recovery of Overpayments*

Pending the redetermination of class members' claims, the court has ordered the immediate reinstatement of benefits to class members whose benefits were terminated. 697 F.Supp. at 354. After paying these interim benefits, however, the Secretary may determine that some class members were not entitled to receive benefits. Under these circumstances, the Secretary may recover any overpayment of interim benefits pursuant to 42 U.S.C. §§ 423(g)(2)(B) & 1383(b). In defining such overpayments, paragraph 6 of plaintiffs' proposed order states: "No payment to a redetermination class member shall be considered an overpayment ... unless SSA [the Social Security Administration] has determined that the individual allegedly overpaid was ineligible for disability benefits for the months with respect to which the alleged overpayments were made." The Secretary objects to this definition of

---

5. For a complete description of this five-step process and its application, see *Johnson v. Heck-* *ler,* 593 F.Supp. 375, 377–78 (N.D.Ill.1984).

"overpayment" because it conflicts with his narrow interpretation of the scope of redetermination. This court, however, has already ruled that the Secretary's reassessment of each class member's claim must encompass the entire time period since the class member filed his initial application. Consistent with this ruling, the court adopts plaintiffs' definition of "overpayment."

### E. *Subparagraph 13(d): Compliance Reports*

■ The parties' final dispute over plaintiffs' proposed order concerns subparagraph 13(d), which requires the Secretary to produce periodic reports detailing his progress in implementing relief. The Secretary has consented to provide plaintiffs' attorneys with a compliance report for each six-month period from the entry of final judgment until each class member obtains relief. Moreover, the parties agree that each compliance report will feature most of the specific components described in subparagraph 13(d), including a statistical breakdown of the Secretary's redeterminations of class members' claims. Nonetheless, the Secretary has balked at plaintiffs' request in subparagraph 13(d) for data regarding class members' appeals to administrative law judges or the Appeals Council. The Secretary insists that the compilation of such data would prove extremely burdensome, involving the review of numerous files in various locations throughout the United States. Even if the Secretary is exaggerating the difficulty of gathering information on class members' appeals, the court questions the utility of such information. Plaintiffs' attorneys can adequately monitor the Secretary's compliance with this court's orders by reviewing the data that the Secretary has already agreed to supply. Thus, the Secretary's compliance reports will fully serve their purpose whether or not they include information on class members' appeals. For this reason, the court will not require the Secretary to report the results of class members' appeals in his semiannual compliance reports.

## II. The Secretary's Motion for Reconsideration of Class Certification

■ To participate in this class action lawsuit, unsuccessful disability claimants did not need to exhaust their administrative remedies or file a timely petition for judicial review. When certifying the *Johnson* class, this court elected to waive the exhaustion requirement for class members. 100 F.R.D. at 73–74. One year later, the court found that the Secretary had waived the statute of limitations. 607 F.Supp. at 877–78. On three previous occasions, the Secretary's predecessors have asked this court to reconsider these jurisdictional rulings. Each time, the court has reaffirmed its original rulings. 697 F.Supp. at 353; 607 F.Supp. at 878–80; 604 F.Supp. at 1072–74. Undaunted by these repeated rebuffs, the Secretary recently mounted yet another challenge to the composition of the class. Several weeks after the parties moved for entry of an amended judgment order, the Secretary filed an independent motion for reconsideration of class certification in light of the Supreme Court's recent decision in *Pittston Coal Group v. Sebben,* —— U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988).

*Sebben* involved a class of coal miners who had applied for black lung benefits. In denying the claims of these miners, the Secretary of Labor applied regulations that the Eighth Circuit subsequently struck down. *See Coughlan v. Director, Office of Workers' Compensation Programs,* 757 F.2d 966 (8th Cir.1985). Following the invalidation of these regulations, the *Sebben* plaintiffs sought readjudication of their claims under the standard of review prescribed by *Coughlan.* In requesting this reconsideration, the *Sebben* plaintiffs faced a serious obstacle. None of the *Sebben* class members had exhausted administrative remedies, and most of the miners in the class had not filed a timely petition for judicial review. Therefore, the *Sebben* plaintiffs' claims had already become final. When the Secretary of Labor refused to reconsider these final determinations, the *Sebben* plaintiffs persuaded the Eighth Circuit to issue a writ of mandamus compel-

ling the Department of Labor to reopen the claims of all class members. *See In re Sebben*, 815 F.2d 475 (8th Cir.1987). On appeal, the Supreme Court agreed that the Secretary of Labor had previously applied invalid regulations when deciding class members' claims. *Sebben*, 109 S.Ct. at 419–23. Nonetheless, the Supreme Court reversed the Eighth Circuit's mandamus order. The Court observed that "[t]he extraordinary remedy of mandamus ... will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Id.* at 424 (citing *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984)). The Court then concluded that the *Sebben* plaintiffs had not established a duty to reopen the final determinations of their claims. *Id.* Consequently, the Court ordered dismissal of the petition for mandamus. *Id.*, 109 S.Ct. at 425.

Factually, *Sebben* bears a certain resemblance to the instant case. In each case, a government agency relied on invalid regulations when denying certain claims for federal disability benefits. In each case, several of the affected claimants filed a class action suit seeking reconsideration of their applications for benefits. Finally, in each case, plaintiffs' proposed class included claimants who had not satisfied the procedural requirements of exhaustion and timeliness. After noting these superficial similarities between the cases, the Secretary argues that each case should produce a similar outcome: the denial of readjudications to class members who have not exhausted administrative remedies or complied with the statute of limitations. This argument overlooks a rather obvious point: Although *Sebben* and *Johnson* may have evolved from similar factual scenarios, the similarity between the cases ends when the legal analysis begins. In *Sebben*, the Supreme Court denied plaintiffs relief because they had not justified judicial resort to the extreme remedy of mandamus under 28 U.S.C. § 1361. By contrast, the Secretary's challenge to the *Johnson* class raises two entirely different issues: judicial waiver of exhaustion and the Secretary's waiver of the 60-day limitations period under the Social Security Act, 42 U.S.C. § 405(g).

Thus, the Supreme Court's mandamus analysis in *Sebben* provides this court with little assistance in defining the appropriate scope of the *Johnson* class.

The Secretary acknowledges that *Sebben* did not directly address the jurisdictional issues involved in Social Security class action suits. Nonetheless, the Secretary urges this court to redefine the *Johnson* class by applying the "policy" espoused in *Sebben*. According to the Secretary, *Sebben* stands for the general principle that courts should favor the finality of claims over the waiver of procedural prerequisites. This court does not read *Sebben* so broadly. In any event, the court need not strain to apply *Sebben* to the instant case when the Supreme Court has already offered more explicit guidance concerning the waiver of procedural prerequisites in Social Security class actions. In *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), the Supreme Court analyzed the very same issues raised by the Secretary in his continuing challenge to the composition of the *Johnson* class. Last October, based on its analysis of *City of New York*, this court concluded that it had properly defined the *Johnson* class "to include claimants who did not satisfy the requirements of timely appeal and exhaustion—requirements that have been waived in the context of this litigation." 697 F.Supp. at 353. *Sebben* does not alter the court's position on this matter.

Contrary to this court's conclusion, the Secretary continues to insist that *City of New York* justifies his proposed redefinition of the class. He claims to find additional support for this argument in *Sebben*'s discussion of *City of New York*. In fact, *Sebben*'s passing reference to *City of New York* has little if any relevance to the issues involved in the instant case. When discussing *City of New York*, the *Sebben* Court focused solely on the issue of equitable tolling of the statute of limitations. *See Sebben*, 109 S.Ct. at 425. In the instant case, however, this court did not rely on the equitable tolling doctrine; rather, the court found that the Secretary had waived the limitations period. 607 F.Supp.

at 877–78. Thus, *Sebben* sheds no new light on how *City of New York* affects the definition of the *Johnson* class.[6]

■ Despite his citation to a recent Supreme Court decision, the Secretary's latest challenge to the class echoes most of the same arguments that this court has already rejected. For the fourth time, the court declines the Secretary's invitation to overturn its previous waiver rulings. Nonetheless, at the Secretary's request, the court will make one minor modification to the class definition: The class will not include individuals whose applications were denied or whose entitlements were terminated after May 1, 1985. By that date, the Secretary had abandoned the practice of refusing to combine nonsevere impairments. In assessing all disability claims since that date, the Secretary has not applied the regulation that this court invalidated in *Johnson.* For this reason, May 1, 1985 represents an appropriate temporal terminus for the class. Accordingly, the court shall amend the class definition in its final judgment order, closing the class as of May 1, 1985.

### III. Plaintiffs' Motion for Rule 11 Sanctions

Although the Secretary learned about *Sebben* while the parties were negotiating an amended judgment order, he did not immediately indicate to plaintiffs that he would mount yet another challenge to the composition of the class. In fact, at the time the parties filed their competing motions for amended judgment, the Secretary raised no objection to the definition of the class proposed by plaintiffs. Then, several weeks after the parties had finished briefing their motions for amended judgment, the Secretary filed a motion for reconsideration of class certification in light of *Sebben.* Plaintiffs characterize this eleventh-hour motion for reconsideration as a harassing and dilatory tactic that needlessly increased the cost of this litigation. On this basis, plaintiffs seek sanctions under Fed.R.Civ.P. 11.

■ In assessing the propriety of imposing Rule 11 sanctions, this court must make "an objective determination of whether [the Secretary's] conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1435 (7th Cir.1987). Judged by an objective standard of reasonableness, the timing of the Secretary's motion for reconsideration defies easy explanation. In attempting to justify his delay in filing the motion, the Secretary offers a couple of lame excuses. First, he claims that his motion for amended judgment, which simply concerned the details of implementing relief, did not provide an appropriate context for raising his objections to the class, which challenged the merits of the court's prior orders. This assertion is rather dubious; when moving for amended judgment, the Secretary could easily have challenged plaintiffs' proposed class definition in the same manner that he objected to other aspects of plaintiffs' proposed order. Even giving the Secretary the benefit of the doubt, his reluctance to raise the class certification issue in his motion for amended judgment does not explain why he waited more than a month after the completed briefing of the motions for amended judg-

---

**6.** According to the Secretary, *Sebben*'s analysis of *City of New York* confirms his previous assertion that this court cannot waive exhaustion in the instant case because the Secretary did not act in accordance with a secret internal policy. This argument misconstrues both *Sebben* and *City of New York. Sebben* simply observed that the equitable tolling doctrine only applies to cases where a government agency implements a secret policy. *Sebben,* 109 S.Ct. at 425. Similarly, *City of New York* required the existence of a secret government policy before a court could waive the exhaustion requirement. This secret policy prerequisite, however, only applies to cases where the limitations period had al-

ready expired. *City of New York,* 476 U.S. at 482, 106 S.Ct. at 2031. In the case of active claims, *City of New York* prescribed an alternative approach to determine the propriety of judicial waiver of exhaustion: application of the two-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *City of New York,* 476 U.S. at 482–85, 106 S.Ct. at 2031–32. This court applied the *Eldridge* test in the instant case, where the claims of all class members remain active by virtue of the Secretary's waiver of the statute of limitations. Thus, when deciding to waive exhaustion, the court followed precisely the approach endorsed by *City of New York.*

ment before he filed his motion for reconsideration. The Secretary tries to attribute this delay to the fact that he recently retained a new attorney. This attorney, however, entered the case while the parties were still negotiating the details of the amended judgment order. Moreover, the Secretary has retained the same attorney of record from the outset of this litigation. Therefore, a change in counsel does not account for the Secretary's delay in filing his motion for reconsideration of class certification.

Ultimately, the Secretary can offer no reasonable explanation for the timing of his motion for reconsideration. His conduct probably merits Rule 11 sanctions. Nonetheless, this court has decided to deny plaintiffs' motion for Rule 11 sanctions. The imposition of such sanctions would unfairly single out the Secretary as the sole villain in this litigation. At various points in the litigation, attorneys on both sides have engaged in unreasonable conduct, advancing legal arguments that were highly questionable if not indefensible. The court attributes this phenomenon to the rancorous relationship that has developed between the lawyers, a blood feud that evokes images of the Montagues and the Capulets. The attorneys' animosity toward each other has transformed zealous advocacy of noble principles into inflexible adherence to untenable positions. In this war of words between the attorneys, the only casualties have been the class members, some of whom have died while awaiting a rehearing on their disability claims. Although plaintiffs' attorneys may fancy themselves the white knights of this litigation, their outrageous posturing has contributed to the delay in their clients' receipt of relief.

Arguably, attorneys on both sides of this lawsuit have engaged in sanctionable conduct. In light of this mutual misconduct, the court sees no point in sanctioning either of the parties at this late stage of the lawsuit. The court can only hope that the entry of an amended judgment order will restore some semblance of civility and reasonableness to this litigation.

## CONCLUSION

For the foregoing reasons, the court grants plaintiffs' motion for entry of an amended judgment order. As the court has previously discussed, this amended judgment order will include certain amendments proposed by the Secretary. Insofar as the Secretary asks the court to close the plaintiff class as of May 1, 1985, the court grants the Secretary's motion for redefinition of the class. In all other respects, however, the court denies the Secretary's motion for reconsideration of class certification. The court also denies plaintiffs' motion for Rule 11 sanctions.

To ensure the full and prompt implementation of the relief previously ordered by this court, it is hereby ORDERED, ADJUDGED, AND DECREED that:

1. As used herein, the following terms have the meanings indicated.

(a) "Class Members" means the class of persons defined as:

All persons in Illinois who have filed applications for disability benefits under Title II and/or Title XVI of the Social Security Act, and whose benefits (between February 26, 1979 and May 1, 1985 inclusive) have been denied pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(c) and .1522 (1983), 416.920(c) and .922 (1983), and Social Security Rulings cum ed. 82–55, 82–56 (1982); and all recipients of such benefits who (between February 26, 1979 and May 1, 1985 inclusive) have made claims for continued benefits (through participation in a Continuing Disability Interview), and whose benefits have been terminated pursuant to the same policies.

(b) "Secretary" or "Defendant" means the defendant Secretary of Health and Human Services.

(c) "SSA" means the Social Security Administration.

(d) "BDDS" means the Illinois Bureau of Disability Determination Services.

(e) "DDS" means any state disability determination service unit (other than BDDS) having jurisdiction over the redetermination of a class member's claim

under ¶ 4 *infra,* or other state or federal entities designated by SSA to have such jurisdiction.

(f) "disability benefits" means benefits paid under Titles II and/or XVI of the Social Security Act, to persons who were or are eligible for them, because they were or are disabled within the meaning of the Act.

(g) "SSA administrative decision" means any decision on a claim when rendered by any SSA administrative unit or decision maker, including BDDS (or any DDS), an Administrative Law Judge (ALJ), or the Appeals Council.

(h)(i) "redetermination class members" means class members who claimed to be or were suffering from multiple "nonsevere" or "severe" impairments and:

(A) whose de novo applications for disability benefits were denied at the severity step of the sequential evaluation process by any SSA administrative decision between August 20, 1980 and May 1, 1985 inclusive, or;

(B) whose previously awarded disability benefits were terminated at the severity step of the sequential evaluation process and by any SSA administrative decision between August 20, 1980 and May 1, 1985 inclusive, or;

(C) whose claims for disability benefits were denied or terminated at the severity step of the sequential evaluation process by the BDDS between February 26, 1979 and August 19, 1980 inclusive, if they were listed by the BDDS under listing code 922.

(ii) Under this definition, no person otherwise a redetermination class member shall be deemed not such a class member because: (a) he appealed any denial or termination of a claim (to an Administrative Law Judge, to the Appeals Council, or to the federal courts), or because the time for such appeals lapsed and an appeal was not taken; or (b) based on a later application, he was found eligible for disability benefits for a period of time later than that with respect to which his benefits were initially denied or terminated; or (c) he failed to allege multiple impairments but the evidence establishes the existence of more than one impairment; or (d) he received a judicial decision on his claim.

(iii) Under this definition, a person who would otherwise be a redetermination class member because a particular claim was denied or terminated at the severity step of the sequential evaluation process is not such a class member if:

(A) the last SSA administrative denial or termination he received respecting that particular claim was based on any step of the sequential evaluation process other than the severity step; or

(B) he received an SSA administrative decision on a subsequent claim for disability benefits that reopened an earlier severity denial or termination of that claim, which decision determined entitlement to benefits for a period beginning no later than the first date with respect to which his eligibility would otherwise be redetermined under this order, and either the last SSA administrative denial on the subsequent claim was based on any step of the sequential evaluation process other than the severity step, or the last administrative denial on the subsequent claim was based on the severity step of the sequential evaluation process, but the denial came after May 1, 1985.

(i) "responding claimants" means the persons on whose behalf the election forms described in ¶ 4(a) and (b) *infra* are returned to SSA.

(j) "claims" when used in connection with "redetermination class members" means such class members' applications for disability benefits under Titles II and/or XVI of the Social Security Act, or their claims for continuing disability benefits under Titles II and/or XVI of the Act, or any request for disability benefits to which they may be entitled under this order.

(k) "redetermination" or "redetermine" when used in connection with "claims" and/or "redetermination class members" means:

(i) for a redetermination class member whose Title XVI application was denied or whose Title XVI benefits were terminated, a new determination by BDDS (or an appropriate DDS) on the class member's claim, the new determination to establish eligibility *vel non* for disability benefits for the entire period from the date of the class member's Title XVI application (that was denied) or from the date of the termination of Title XVI benefits, to the date the new determination decision is made (and thereafter until eligibility ends). "Redetermination" also includes the issuance of a written decision explaining the result of the determination to the individual claimant (whose claim has been redetermined) and to his designated representative (if any);

(ii) for a redetermination class member whose Title II application was denied or whose Title II benefits were terminated, a new determination by BDDS (or an appropriate DDS) on the class member's claim, the new determination to establish eligibility *vel non* for disability benefits for the entire period from the seventeenth month prior to the date of the Title II application or from the date of termination of Title II benefits (or date of alleged onset, whichever is later), to the date the redetermination decision is made (and thereafter until eligibility ends). "Redetermination" also includes the issuance of a written decision explaining the result of the determination to the individual claimant (whose claim has been redetermined) and to his designated representative (if any);

(*l*) "retroactive benefits" when used to refer to the payment of disability benefits to "redetermination class members" means the payment of disability benefits to such persons for all periods from February 26, 1979 inclusive to the date of the redetermination decision, provided that they are eligible for them, as determined by the redeterminations required by ¶¶ 4, 5, and 10 of this order;

(m) "sequential evaluation process" means the process for determining eligibility for disability benefits described in 20 C.F.R. §§ 404.1520 and 416.920, and the "severity step" is the step of that process described at 20 C.F.R. §§ 404.-1520(c) and 416.920(c);

(n) "combination criteria" means the following statutory eligibility criteria:

In determining whether an individual's physical or mental impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility ... [for disability benefits], the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(C);

(*o*) "Reinstatement Order" means this court's Memorandum Order of October 6, 1988.

2. The court's Order of March 3, 1988 dismissing this case, but retaining jurisdiction for sixty (60) days to permit plaintiffs to move to reinstate the case, is vacated, pursuant to Fed.R.Civ.P. 60(b)(5), (6).

3. Within one hundred twenty (120) days of the entry of the Reinstatement Order, the Secretary, through the use of SSA's automated data base, shall identify the persons who may be redetermination class members, except that the list of persons so identified may be refined and verified within the thirty (30) day period following the entry of this order.

4. SSA administrative decisions made prior to May 2, 1985 upon the claims of responding claimants determined to be redetermination class members are vacated, and the Secretary shall make redeterminations (reopening if necessary) of the claims of all such responding claimants who are determined to be redetermination class members. In making these redetermina-

tions, and on appeals from adverse redeterminations (*see* ¶ 10, *infra*), the sequential evaluation process, including the Act's combination criteria, shall be employed. The Secretary shall be entitled to verify that redetermination class members meet all the non-disability related eligibility criteria for payment of disability benefits. The procedure governing the conduct of such redeterminations (including the procedure for notifying claimants of such redetermination decisions and appeal rights, and for paying benefits owed) shall be as follows:

(a) Not later than sixty (60) days after the entry of this order, the Secretary shall send to each person who has been identified as a redetermination class member whose de novo application for disability benefits was denied, the notice attached hereto as Exh. A–1. (Such notices shall be sent by first class mail, postage prepaid, and to such class member's last known address). With the Exh. A–1 notice, defendant shall provide Exh. A–2, which, as printed, shall be an election form by which the election described in Exh. A–1 notice may be made. The election form shall either be accompanied by a pre-addressed postage prepaid envelope in which the election form can be returned to SSA, or it will itself be returnable to SSA as a postage prepaid postcard. The pre-addressed envelope or postcard, whichever is used, shall be pre-addressed to a single location (as opposed to various SSA local offices).

(b)(i) Not later than sixty (60) days after the entry of this order, the Secretary shall send to each person who has been identified as a redetermination class member whose previously awarded disability benefits were terminated, the notice attached hereto as Exh. B–1. (Such notices shall be sent by first class mail, postage prepaid, and to such class member's last known address). With the Exh. B–1 notice, defendant shall provide Exhibit B–2, which, as printed, shall be an election form by which the election described in Exh. B–1 notice may be made. The election form shall either be accompanied by a pre-addressed postage

prepaid envelope in which the election form can be returned to SSA, or it will itself be returnable to SSA as a postage prepaid postcard. The pre-addressed envelope or postcard, whichever is used, shall be pre-addressed to a single location (as opposed to various local SSA offices).

(ii) Redetermination class members who return a completed Exh. B–2 election form may elect to have their benefits reinstated (as described in the Exh. B–1 notice), following completion of one of the applicable forms attached as Group Exh. C hereto. (SSA will contact the redetermination class member respecting completion of this form as soon as possible after that class member's claims file is retrieved or reconstructed, but in no event later than thirty (30) days after his claims file is retrieved or reconstructed.) However, if a redetermination class member reports, or SSA becomes aware of, current work activity, SSA will secure a statement from him regarding his work activity, the amount of monthly wages, and any other pertinent information pertaining to his employment. Except as provided in section 1619 of the Social Security Act, 42 U.S.C. § 1382h, reinstated (interim) benefits shall not be payable for any month for which earnings are at or beyond the substantial gainful activity level. If interim benefits are not payable for that reason, then defendant shall notify the individual denied such benefits of that fact, and the reason for the denial. Defendant will also inform that individual that if he has any questions, he may contact a social security office, or plaintiffs' counsel (whose names, address, and phone number will be provided).

(iii) The Secretary shall make all good faith efforts to reinstate benefits to a redetermination class member within forty-five (45) days after the claims file of such a class member is retrieved (provided that he is determined to be entitled to such benefits), or, if such a class member's claims file is lost, the Secretary shall make all good faith efforts to reinstate benefits to him within forty-five

(45) days of the expiration of the four-month period specified in ¶ 4(d). Benefits shall be reinstated in an amount equal to the amount reinstated class members would then be receiving, including subsequent cost-of-living increases, had their benefits never been terminated, and effective with the date that SSA received the Exh. B–2 election form from the redetermination class member. The payment of such reinstated benefits shall continue from month to month until there has been an ALJ determination that the individual whose benefits have been reinstated is not currently eligible for benefits, or until there has been an earlier SSA administrative decision that the individual is not currently eligible for benefits, and that decision became final because the individual did not appeal.

(c) Persons sent notices pursuant to subparagraphs (a) and (b) who do not respond to the notices within sixty (60) days of the day they receive them, as provided therein, shall be given the opportunity to show good cause for such failure to respond pursuant to 20 C.F.R. §§ 404.909, 404.911, 416.1409, 416.1411.

(d) On a schedule to be determined by SSA (that shall be consistent with achieving compliance with the requirements of ¶ 4(e)(ii), *infra*), SSA shall generate computer alerts showing the processing center having jurisdiction over the claims of redetermination class members, and shall arrange for retrieval of the claims files of such class members. The first computer alerts generated shall call for the claims files of all responding claimants whose benefits have been terminated. Defendant shall begin reconstructing the claim file of any redetermination class member whose file cannot be located within four (4) months after a computer alert has been generated for the claim file of that individual. Redetermination class members whose files are being reconstructed shall be notified of that fact, and shall, consistent with applicable regulations, submit documentary evidence to SSA that will assist defendant in reconstructing the file and that might support their claim.

(e) Defendant, by BDDS (or the DDS to which a responding class member's case file has been sent), shall:

(i) screen all files to determine if the responding class member is a redetermination class member. Defendant shall mail (by first class mail postage prepaid) to any individual whom he determines is not a redetermination class member a notice, the form of which is attached hereto as Exh. D. A copy of the completed notice will be sent to plaintiffs' counsel. Within forty-five (45) days of plaintiffs' attorneys' subsequent request, or within some other mutually agreed upon time, the Secretary shall make available that individual's claims file to plaintiffs' counsel at some mutually agreed upon location or locations. If plaintiffs' attorneys' review of the file thereafter establishes that there is a dispute between the parties as to whether an individual is a redetermination class member, counsel for plaintiffs and defendant (or their designees) shall seek to resolve such disputes by negotiation; provided, however, that both plaintiffs and defendant shall each designate one or more persons to represent them in the negotiations, which individual(s) shall have final authority to settle such disputes. Either party may submit any unresolved dispute to the court for resolution, by a duly noticed motion;

(ii) Redetermine the claims of all responding claimants who have been determined to be redetermination class members, based on the evidence in their claims files; provided, however, that in making such redeterminations the Secretary is obliged to develop and redetermination class members shall provide evidence respecting such class members' claims in accordance with the requirements of: 20 C.F.R. §§ 404.1512, 404.1514, 404.1517, 404.1614; 20 C.F.R. §§ 416.912, 416.914, 416.917, 416.1014, and include such evidence in the case file. Defendant, by the BDDS and any DDS making redeterminations, shall make a good faith

effort to complete the redeterminations of all redetermination class members entitled to redeterminations of their eligibility under this order within two years after the date the notices required by subparagraphs (a) and (b) are first mailed, and shall further make a good faith effort to complete such redeterminations at an average rate of at least eight hundred (800) a month for a two-year period beginning with the first full calendar month sixty (60) days after such notices are first mailed; provided, however, that if the Secretary is required to complete more than 21,000 redeterminations under this order, then he shall notify plaintiffs' counsel of that fact in writing promptly after he ascertains it. Counsel for the parties shall thereafter attempt to agree upon what additional time, if any, beyond the two-year period the Secretary shall be allowed to complete all the redeterminations he must complete. If no agreement can be reached after a one hundred twenty (120) day period of negotiation, during which time either party may take discovery, then either party may, by motion, submit the matter to the court for its resolution.

While any DDS is permitted to conduct redeterminations pursuant to this order, at least seven hundred (700) of the total number of redeterminations conducted pursuant to this order each month, or a majority of the total redeterminations conducted pursuant to this order each month, whichever is less, must be done by the BDDS.

(f) If an individual is a redetermination class member by virtue of a claim for disability benefits with respect to which there is a pending action in federal court, he may elect to have his case remanded to the BDDS or to the DDS of the state in which he resides for a redetermination identical to the ones required for other redetermination class members, subject to the approval of the court. Defendant shall notify such class members of the opportunity they have to make such an election, and provide a written form by which such an election may be made. If such an election is made, defendant shall move the court to, or agree to, a remand of the case. Defendant shall make a good faith effort to complete the redetermination of a redetermination class member whose case has been remanded from a federal court within four (4) months of the date that defendant receives a copy of the remand order.

(g) Redetermination class members whose eligibility for benefits is redetermined by BDDS (or a DDS) pursuant to subparagraphs (a)-(f) *supra*, and who are determined eligible for retroactive benefits, shall be paid such benefits for all periods for which they are determined eligible for them, pursuant to ¶ 7 *infra*.

5. Notwithstanding the requirements of ¶ 4, the Secretary is not required to send notices to or redetermine the eligibility of any redetermination class member who is dead and who: (a) does not have (as of the date he is determined to be a redetermination class member) a "living with eligible spouse" or "eligible parent," as described in 20 C.F.R. § 416.542(b); and (b) between February 26, 1979 and May 1, 1985 inclusive, made application for disability benefits only under Title XVI (as opposed to Title II) of the Social Security Act, or was a recipient of disability benefits only under Title XVI (as opposed to Title II). Redeterminations must be made for all other responding claimants who are determined to be redetermination class members, even if such class members are dead.

6. Any overpayment that results from the ultimate determination of the claim of a redetermination class member whose benefits were reinstated under ¶ 4(b) shall be subject to waiver consideration under 42 U.S.C. §§ 423(g)(2)(B), 1383(b). No payment to a redetermination class member shall be considered an overpayment, however, unless SSA has determined that the individual allegedly overpaid was ineligible for disability benefits for the months with respect to which the alleged overpayments were made.

7. The Secretary shall grant retroactive disability benefits to all redetermination

class members for all periods that such persons (upon the redetermination of their eligibility pursuant to ¶¶ 4, 5, and 10) are found eligible for them. The Secretary shall make all good faith efforts to pay such retroactive benefits within sixty (60) days after the determination of eligibility is made in the individual claimant's case. If the Secretary determines that the redetermination class member to whom retroactive benefits would be paid is dead, then payment of such benefits shall be made in accordance with the underpayment requirements of 20 C.F.R. §§ 404.503, 416.542.

8. With respect to the notices required by ¶ 4(a) and (b) that are returned to the Secretary as undelivered, he shall immediately remail them by first class mail. For those notices returned a second time as undeliverable, the Secretary shall identify the individuals to whom those notices were sent, and then use procedures set forth in SSA Program Operations Manual Systems ("POMS") procedures to determine the current whereabouts of that class member. Before employing such POMS procedures, defendant shall attempt to establish a procedure for securing from the Illinois Department of Public Aid the last known address (if any) that agency may have for that individual. If that address is a later address for the redetermination class member than that initially utilized by the Secretary, then he shall use that later address in seeking to direct such notice. If, after taking the steps required under this paragraph, the Secretary determines the whereabouts of a redetermination class member whose ¶ 4 notice was returned as undelivered, he shall send him a new notice comparable to the first notice. The time within which a redetermination class member sent such a second notice shall be required to make an election shall, however, run from the date this new notice is sent to him.

9. The Secretary shall ensure that a blank copy of the form of any SSA notices related to this case that SSA plans to send or give to redetermination class members, shall be received by plaintiffs' counsel at least twenty-one (21) days prior to the date SSA plans to print them unless plaintiffs' counsel, following a review of any such notices, waives the twenty-one (21) day period in writing. Provision of these notices to plaintiffs' counsel is intended to afford them the opportunity to comment upon such notices, before they are printed.

10. The Secretary, by BDDS or by the DDS making the redetermination, shall notify redetermination class members (and their designated representatives, if any) of favorable and unfavorable decisions made by the BDDS or DDS in their cases, pursuant to ¶ 4 *supra*. Such notices shall: contain an explanation of the reasons for the decision if less than completely favorable, and appeal rights; inform the redetermination class members that they may submit additional evidence, on appeal, in support of their claim; inform them that if they wish further information they may contact a local social security office, their own representative, or the attorneys for the class (whose names, address, and phone number shall be given); inform them that the attorneys for the class may be able to represent them without charge in prosecuting their appeal; inform them that they have sixty (60) days from the date the notice is sent to them to request an Administrative Law Judge hearing. Individuals sent such notices shall have full rights to seek timely administrative and judicial review of the redetermination decision made pursuant to ¶ 4 *supra*, under 20 C.F.R. Part 404, Subpart J, and Part 416, Subpart N, and 42 U.S.C. §§ 405(g), 1383(c).

11. Nothing in this order shall be construed as precluding defendant from employing the quality assurance review procedures set forth in 42 U.S.C. § 421(c)(3) in any class member's case, to the extent defendant deems that appropriate. Nothing in this order shall be construed as precluding class members from obtaining greater relief on alternative grounds. Nothing in this order shall be construed as precluding class members who choose to proceed with their individual court cases from seeking relief in those cases.

12. The Secretary shall:

(a) within thirty (30) days of the entry of this order, issue a teletype to all SSA

offices (including BDDS and any appropriate DDS) having responsibilities under this order, which teletype shall provide relevant information relating to the terms of this order needed by SSA offices;

(b) within one hundred fifty (150) days from the entry of this order, issue directives and instructions designed to ensure full compliance with it.

13. The Secretary shall:

(a) provide plaintiffs' attorneys with copies of all teletypes, instructions, directives, transmittals, agency letters, and like documents issued by SSA to describe this order to SSA field offices (including Regional Offices, District Offices, Quality Assurance offices, BDDS or any state DDS with responsibilities under this order), or to effect compliance with this order, just as soon as those documents are issued;

(b) serve upon plaintiffs' attorneys a statement that the mailing of the notices required by ¶ 4(a) and (b) herein has been completed. The statement shall also specify the total number of such notices mailed. The statement shall be served within one (1) week after the mailing has been completed;

(c) serve upon plaintiffs' attorneys, within ninety (90) days after the mailing of the notices required by ¶ 4(a) and (b) *supra* has been completed, a statement attesting to the number of such notices returned a second time as undelivered, and the number of responding claimants;

(d) serve upon plaintiffs' attorneys a report for each six-month period beginning with the first full month after the date of entry of this order and ending when all relief hereunder has been provided, stating, for that six-month period:

(i) the number of responding claimants given notice that they have been screened out of the class, pursuant to ¶ 4(e)(i) *supra;*

(ii) the number of responding claimants whose benefits have been reinstated pursuant to ¶ 4(b) *supra;*

(iii) the number of responding claimants determined eligible for benefits upon redetermination (for part or all of the redetermination period), and the number determined ineligible upon redetermination (for part or all of the redetermination period), and the number of such claimants determined ineligible whose benefits had previously been reinstated pursuant to ¶ 4(b) *supra;*

(iv) the number of redetermination class members the Secretary has determined he cannot locate, pursuant to ¶ 8 *supra.*

The reports required by this subparagraph shall be filed and served not later than thirty (30) days after the close of the six-month period with respect to which the individual report is prepared.

14. The Secretary may petition the court at any time for relief from any one or more of the provisions of ¶ 13 *supra.* Such relief shall be granted upon a showing made by the Secretary and a determination of the court that the implementation of this order is proceeding smoothly and that the information called for in the particular provision or provisions from which the Secretary seeks relief is no longer required to determine that the Secretary is fully and expeditiously complying with the provisions of this order.

15. This order constitutes a final judgment order. The issue of plaintiffs' entitlement to attorneys' fees and costs is reserved. Plaintiffs shall file an appropriate petition for fees within the time permitted by the Equal Access to Justice Act, 28 U.S.C. § 2412. Plaintiffs may file a bill of costs when they file their petition for fees, their time to file the bill being thereby extended.

16. Nothing in this order, and no agreement as to form that this order reflects, shall be construed to limit any party's right to seek a stay of the order or an injunction pending appeal, or to appeal.

17. This court shall retain continuing jurisdiction over this case to enforce the terms of this order, or to entertain motions seeking to modify its terms.

IT IS SO ORDERED.

**1494**

APPENDIX

Exhibit A-1

[SOCIAL SECURITY
ADMINISTRATION
LETTERHEAD]

## YOU MAY BE ELIGIBLE FOR CASH DISABILITY BENEFITS!

### ACT NOW BEFORE IT'S TOO LATE!

[Tag in Spanish: **This is an important notice telling you how you may be entitled to cash disability benefits. Please have it translated right away.**]

We are writing to let you know about a recent U.S. District Court decision that might help you. Under the decision, you can ask for another review of our earlier (before May 2, 1985) decision that you were not disabled, and denying you cash disability benefits. We will use standards set by the Court for these reviews. Based on the review, you may be owed cash disability benefits for past months and in the future.

*Why This Court Decision Is Important To You*

A lawsuit has been filed against Social Security because of the way we made certain kinds of disability decisions. The lawsuit is known as *Johnson, et al., v. Bowen.* The people who filed the *Johnson* suit also filed it for anyone else who was affected by the same kind of decision. This kind of lawsuit is called a "class action". You may be one of the "class" of people included in the suit.

*How To Find Out If You Are Included In The Class*

You should fill out and mail in the postage paid addressed postcard enclosed with this notice. [Alternative: You should fill out and mail in the election form enclosed with this notice. To mail the form, you should use the postage paid addressed envelope that is also enclosed.] If you lose the postcard [election form], or if you think you might be a member of the *Johnson* class even though you did not get one of these notices in the mail, you may go into your local security office and fill out a postcard [election form] there. After we

receive your postcard [election form], we will review your file and tell you whether or not you are in the *Johnson* class.

*How You Can Have The Earlier Decision Reviewed*

By filling out and mailing in the addressed postcard enclosed with this notice, you will be asking us to review the earlier decision. *Mailing in this one postcard promptly is all you need to do.* [Alternative: By filling out and mailing in the addressed election form enclosed with this notice, you will be asking us to review the earlier decision. *Mailing in this one form promptly is all you need to do.*]

*What If The Person To Whom This Notice Is Addressed Has Died*

If the person to whom this notice is addressed has died, we can still do a review in many cases, and a relative should complete the postcard [election form] in the name of (giving the name and social security number of) the person who died. The relative should answer the remaining questions on the postcard [election form] with information about himself or herself (the relative). In addition, the relative should sign his or her *own* name on the signature line, and state his or her relationship to the person who died.

*What if you are now receiving benefits*

Even if you are now receiving benefits, you may still ask for a review of our earlier decision denying you disability benefits. If we review our decision and find we made a mistake, you would be entitled to disability benefits for past periods. Asking for review will not result in loss of your current benefits.

*When You Need To Ask For The Review*

YOU HAVE 60 DAYS TO SEND IN THE POSTCARD [ELECTION FORM]. The 60 days start the day after you receive this notice.

*Additional Evidence*

If we review your case, you have the right, at any time before the review decision, to submit medical and other evidence about your current and past eligibility (from the doctors and hospitals who treated you, for example) for disability benefits. It may help your case if you submit such evidence. You should begin gathering this evidence, but keep it until you are contacted by us. We will contact you when your case is being reviewed, so that you can submit your evidence then. It may take many months from the time you send us your postcard [election form] before we review your case and contact you.

*If You Have Any Questions*

If you have questions, you may contact your local Social Security office. You may also contact the attorneys for the *Johnson* class in the *Johnson v. Bowen* lawsuit, who will answer your questions at no charge. Their address and phone number are:

The Legal Assistance Foundation of Chicago
343 South Dearborn Street, Suite 700
Chicago, IL 60604
Attention: *Johnson*
312/

Tag in Spanish: **This is an important notice telling you how you may be entitled to cash disability benefits. Please have it translated right away.**

### Exhibit A–2

[Postcard or election form addressed to SSA]

TO: Social Security Administration

FROM: *Johnson v. Bowen*

I have received your notice about this lawsuit. I want you to review my claim for disability benefits.

(Please Print)
Name: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Social Security No.: ⎯⎯-⎯⎯-⎯⎯⎯
＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊
Signature: ⎯⎯⎯⎯⎯⎯⎯⎯
Address: ⎯⎯⎯⎯⎯⎯⎯⎯
Phone: ⎯⎯⎯⎯⎯⎯⎯⎯
Date: ⎯⎯⎯⎯⎯⎯⎯⎯

### Exhibit B–1

[SOCIAL SECURITY ADMINISTRATION LETTERHEAD]

### YOU MAY BE ELIGIBLE FOR CASH DISABILITY BENEFITS!

### ACT NOW BEFORE IT'S TOO LATE!

[Tag in Spanish: **This is an important notice telling you how you may be entitled to cash disability benefits. Please have it translated right away.**]

We are writing to let you know about a recent U.S. District Court decision that might help you. Under the decision, you can ask for another review of our earlier (before May 2, 1985) decision that you were no longer disabled, and terminating you cash disability benefits. We will use standards set by the Court for these reviews. Based on the review, you may be owed cash disability benefits for past months and in the future.

*Why This Court Decision Is Important To You*

A lawsuit has been filed against Social Security because of the way we made certain kinds of disability decisions. The lawsuit is known as *Johnson, et al., v. Bowen.* The people who filed the *Johnson* suit also filed it for anyone else who was affected by the same kind of decision. This kind of lawsuit is called a "class action". You may be one of the "class" of people included in the suit.

*How To Find Out If You Are Included In The Class*

You should fill out and mail in the postage paid addressed postcard enclosed with this notice. [Alternative: You should fill out and mail in the election form enclosed with this notice. To mail the form, you should use the postage paid addressed envelope that is also enclosed.] If you lose the postcard [election form], or if you think you might be a member of the *Johnson* class even though you did not get one of these notices in the mail, you may go into your local security office and fill out a postcard [election form] there. After we receive your postcard [election form], we

will review your file and tell you whether or not you are in the *Johnson* class.

*How You Can Have The Earlier Decision Reviewed*

By filling out and mailing in the addressed postcard enclosed with this notice, you will be asking us to review the earlier decision. *Mailing in this one postcard promptly is all you need to do.* [Alternative: By filling out and mailing in the election form enclosed with this notice, you will be asking us to review the earlier decision. *Mailing in this one form promptly is all you need to do.*]

*What If The Person To Whom This Notice Is Addressed Has Died*

If the person to whom this notice is addressed has died, we can still do a review in many cases, and a relative should complete the postcard [election form] in the name of (giving the name and social security number of) the person who died. The relative should answer the remaining questions on the postcard [election form] with information about himself or herself (the relative). In addition, the relative should sign his or her *own* name on the signature line, and state his or her relationship to the person who died.

*What if you are now receiving benefits*

Even if you are now receiving benefits, you may still ask for a review of our earlier decision denying you disability benefits. If we review our decision and find we made a mistake, you would be entitled to disability benefits for past periods. Asking for review will not result in loss of your current benefits.

*How You Can Receive Reinstated Benefits*

If you are a member of the *Johnson* class, you may be eligible to receive REINSTATED MONTHLY CASH BENEFITS during the time we are reviewing your case. After you ask us to review your case, we will get in touch with you and tell you how you can get these monthly cash benefits. Further, the sooner you ask for the review, the sooner you will receive these reinstated benefits if you are eligible for them. Thus, you should ask for this review as soon as possible.

*When You Need To Ask For The Review*

YOU HAVE 60 DAYS TO SEND IN THE POSTCARD [ELECTION FORM]. The 60 days start the day after you receive this letter.

*Additional Evidence*

If we review your case, you have the right, any time before the review decision, to submit medical and other evidence about your current and past eligibility—from the doctors and hospitals who treated you, for example—for disability benefits. It may help your case if you submit such evidence. You should begin gathering such evidence, but keep it until you are contacted by us. We will contact you when your case is being reviewed, so that you can submit your evidence then. It may take many months from the time you send us your postcard [election form] before we review your case and contact you.

*If You Have Any Questions*

If you have questions, you may contact your local Social Security office. You may also contact the attorneys for the *Johnson* class in the *Johnson v. Bowen* lawsuit, who will answer your questions at no charge. Their address and phone number are:

The Legal Assistance Foundation of Chicago
343 South Dearborn Street, Suite 700
Chicago, IL 60604
Attention: *Johnson*
312/

Tag in Spanish: **This is an important notice telling you how you may be entitled to cash disability benefits. Please have it translated right away.**

Exhibit B–2

[Postcard or election form addressed to SSA]

TO: Social Security Administration

FROM: *Johnson v. Bowen*

I have received your notice about this lawsuit. I want you to review my claim for disability benefits.

(Please Print)

Name: _____

Social Security No.: ___–__–____

\* \* \* \* \* \* \* \* \* \* \*

Signature: _____

Address: _____

Phone: _____

Date: _____

#### Exhibit C–1

I have been advised of my right to have the Social Security benefits I receive because of _____'s disability reinstated pending the outcome of the *Johnson* review of SSA's earlier decision regarding the decision that _____ was no longer disabled. I have also been advised that my benefits cannot be reinstated unless _____ requests benefit reinstatement on my behalf. If benefit reinstatement on my behalf is requested, my choice of options is indicated below.

I understand that if the review is unfavorable, I will be asked to pay this money back, including all checks received after ___ makes this election. I understand that I will have the right, however, to ask that I not be required to pay the money back under Social Security regulations. Under these regulations, Social Security is required to look at factors such as whether ___'s request for review was in good faith, whether I was at fault, and my current income and living expenses. I will not be asked to pay back any Medicare benefits I received while the review is pending.

During this benefit reinstatement period and while the review is pending, I agree to report promptly to Social Security any changes which may affect my right to receive benefits, such as work activity, marriage, change of address, student status, etc.

I understand my responsibilities and I have been given a copy of this statement regarding my choice of benefit reinstatement options:

ELECTION

_____ I want benefits reinstated.

_____ I do not want benefits reinstated.

_____ I want Medicare coverage, but I do not want any disability payments.

_____ I understand that I will be billed directly for the Supplemental Medicare insurance coverage, and if payment is not made, the coverage will be terminated.

_____ I want both Part A and Part B Medicare coverage reinstated.

_____ I want only Part A Medicare coverage reinstated.

Signature

Date

#### Exhibit C–2

I have been advised of my right to elect to have my disability benefits and Medicare, if applicable, reinstated to me, pending the outcome of the *Johnson* review of SSA's earlier decision that I was no longer disabled. I understand that benefits can also be reinstated to everyone qualified on my Social Security records whom I have specified below.

I understand that if the review is unfavorable, I will be asked to pay this money back, including all checks received after this election is made. I understand that I will have the right to ask that I not be required to pay the money back, based on Social Security regulations. Under these regulations, Social Security is required to look at factors such as whether my request for review was in good faith, whether I was at fault, and my current income and living expenses. I will not be asked to pay back any Medicare benefits I received while my review is being decided.

While my review is pending and benefits are reinstated, I agree to report promptly to Social Security any changes which may affect my right to receive benefits, such as

work activity, or any change in the status of dependents receiving benefits on my record.

I understand that if I do not want reinstated benefits now, but later request a hearing before an administrative law judge (ALJ), I may elect reinstated benefits until an ALJ decision is made. I understand my responsibilities and I have been given a copy of this statement regarding my choice of benefit reinstatement options:

ELECTION

_____ I do not want any benefits reinstated.

_____ I want only my benefits reinstated.

_____ I want benefits reinstated for me and everyone who was receiving benefits on my Social Security record.

_____ I want benefits reinstated for myself and the following eligible individuals who received benefits on my Social Security record (specify): _____, _____, _____,

_____ I want benefits reinstated for everyone receiving benefits on my Social Security record, except myself.

_____ I want Medicare coverage for myself or anyone else qualified on my Social Security record, but I do not want any disability benefit payments. I understand that I will be billed directly for the Supplemental Medical Insurance coverage, and if payment is not made, the coverage will be terminated.

_____ I want both Part A and Part B Medicare coverage reinstated.

_____ I want only Part A Medicare coverage reinstated.

<u>Signature</u>
<u>Date</u>

Exhibit C–3

I have been advised of my right to elect to have my SSI disability benefits and Medicare, if applicable, reinstated to me, pending the outcome of the *Johnson* review of SSA's earlier decision that I was no longer disabled.

I understand that if the review is unfavorable, I will be asked to pay this money back, including all checks received after this election is made. I understand that I will have the right to ask that I not be required to pay the money back, based on Social Security regulations. Under these regulations, Social Security is required to look at factors such as whether my request for review was in good faith, whether I was at fault, and my current income and living expenses. I will not be asked to pay back any Medicare benefits I received while my review is being decided.

While my review is pending and benefits are reinstated, I agree to report promptly to Social Security any changes which may affect my right to receive benefits, such as work activity, changes in my income, resources, and living arrangements.

I understand that if I do not want reinstated benefits now, but later request a hearing before an administrative law judge (ALJ), I may elect reinstated benefits until an ALJ decision is made. I understand my responsibilities and I have been given a copy of this statement regarding my choice of benefit reinstatement options:

ELECTION

_____ I do not want any benefits reinstated.

_____ I want only my benefits reinstated.

<u>Signature</u>
<u>Date</u>

Exhibit D

UNFAVORABLE DECISION ON
*JOHNSON* CLASS
MEMBERSHIP

You asked Social Security to look again at your claim for disability benefits. We have looked at your case. We think that you are not a member of the *Johnson* class for the reason given below. This means that we will not review your claim.

A copy of this letter is being sent to attorneys for the class. If they think that we are wrong, we may change our minds and look at your case again. If you think we are wrong, you may write or call class counsel, who will answer your questions about class membership without charge. The names, address, and telephone number of these attorneys are:

Joseph Antolin, John Bouman, Robert Lehrer, Julie Nice

Legal Assistance Foundation of Chicago

343 S. Dearborn St.

Suite 700

Chicago, Illinois 60604

Attn: *Johnson*

Phone: 312–

**REASON FOR UNFAVORABLE DECISION**

You are not a *Johnson* class member because:

_____

(Checklist to be developed by SSA in consultation with plaintiffs' attorneys)

You may contact your local Social Security Office if you have any questions about this notice.

Tag in Spanish: **This is an important notice about social security benefits. Please have it translated right away.**