**Edna JOHNSON, et al., Plaintiffs,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 83 C 4110.**

United States District Court, N.D. Illinois, E.D.

Oct. 6, 1988.

---

Joseph A. Antolin, John Bouman, Robert Lehrer, Julie A. Nice, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Anton R. Valukas, U.S. Atty. by Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

In 1984, plaintiffs in this class action suit successfully challenged several regulations governing the evaluation of federal disability claims. At the time, this court granted retroactive and prospective injunctive relief to plaintiffs. Four years later, after winding its way through the appellate courts, the case has returned to this court. In remanding this case, the Seventh Circuit instructed the court to conduct further proceedings in light of a subsequent Supreme Court decision. After complying with the Seventh Circuit's remand order, the court now modifies its original award to the plaintiff class. The court also orders immediate implementation of the modified injunctive relief.

## PROCEDURAL HISTORY

The Secretary of Health and Human Services ("Secretary") has promulgated regulations governing the determination of eligibility for benefits under the Old–Age and Survivors Disability Insurance ("OASDI") and Supplemental Security Income ("SSI") programs. *See* 20 C.F.R. §§ 404.1520, 416.-920. Pursuant to these regulations, the Social Security Administration ("SSA") employs a five-step sequential process when evaluating OASDI and SSI claims.[1] Based on his application of this five-step procedure, an administrative law judge ("ALJ") denied Edna Johnson's claim for SSI benefits in 1982. That same year, the SSA's Appeals Council applied the five-step analysis when it rejected Jerome Montgomery's appeal from the termination of his OASDI benefits. Neither Johnson's claim nor

---

1. For a complete description of this five-step process and its application, see *Johnson v. Heck-* *ler,* 593 F.Supp. 375, 377–78 (N.D.Ill.1984).

Montgomery's appeal survived step two of the five-step eligibility test. This second step, the so-called "severity regulation," requires each claimant to demonstrate that he suffers from a "severe" impairment "which significantly limits [his] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). In ruling against Johnson and Montgomery, SSA officials concluded that neither claimant had established the existence of a severe impairment.[2]

In 1983, one year after the SSA rejected their respective claims, Johnson and Montgomery filed suit against the Secretary. Their lawsuit challenged the validity of the Secretary's step two requirement as defined by 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1522, & 416.922 (1983), and Social Security Ruling ("SSR") 82–55 (rescinded 1985). Johnson and Montgomery contended that the Secretary's step two policy for evaluating impairments did not comply with the terms of the Social Security Act. The two plaintiffs also asserted that the challenged regulations violated their constitutional right to equal protection under the Due Process Clause of the Fifth Amendment.

Shortly after filing their complaint, Johnson and Montgomery moved to maintain their suit as a class action pursuant to Fed.R.Civ.P. 23. Their proposed class included all persons in Illinois whose applications for benefits were denied (or whose receipt of benefits was terminated) due to the application of the challenged regulations. On December 7, 1983, this court certified the class proposed by Johnson and Montgomery. 100 F.R.D. 70 (N.D.Ill.1983).

■ In the months that followed, both the plaintiff class and the Secretary moved for summary judgment. On September 19, 1984, this court granted plaintiffs' motion for summary judgment. 593 F.Supp. 375 (N.D.Ill.1984). The court found that the severity regulation, 20 C.F.R. §§ 404.-1520(c) & 416.920(c), impermissibly imposed on each claimant a greater burden of proof than the Social Security Act required. In order to make out a *prima facie* case of disability under the Act, a claimant need only show that an impairment prevents him from doing his previous work. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir.1983); *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). This court concluded that the severity regulation, by substituting the term "basic work activities" for "previous work," increased the evidentiary requirements for establishing a *prima facie* case of disability. 593 F.Supp. at 379–81. The court also ruled that certain supplemental regulations, 20 C.F.R. §§ 404.1522 & 416.-922 and SSR 82–55, violated the Social Security Act by prohibiting consideration of the combined effect of multiple nonsevere impairments on a claimant's ability to work. *Id.* at 381. The court enjoined the Secretary from enforcing the challenged regulations insofar as they implemented the invalid policies of increasing the claimant's burden of proof and refusing to combine nonsevere impairments. In addition, the court ordered the Secretary to: (1) hold new disability hearings for class members; (2) reinstate benefits previously terminated by application of the invalid regulations; and (3) grant retroactive benefits to class members who, after a new hearing, are found to be disabled. *Id.* at 381–82.[3]

In her subsequent motion to alter or amend the court's summary judgment order, the Secretary argued that the plaintiff class improperly included claimants who had not fully satisfied procedural prerequisites. For instance, some class members had failed to comply with section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which requires claimants to seek judicial review of the Secretary's final decisions

---

2. For a more detailed discussion of Johnson's claim and Montgomery's appeal, see *Johnson v. Heckler*, 769 F.2d 1202, 1206 (7th Cir.1985), *vacated and remanded*, —— U.S. ——, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987).

3. Although plaintiffs succeeded in obtaining summary judgment, this court explicitly rejected

plaintiffs' primary contention that the Social Security Act mandates consideration of vocational factors and residual functional capacity at step two of the five-step test. 593 F.Supp. at 379. The court also declined to address plaintiffs' constitutional claim, having already awarded relief on statutory grounds. *Id.* at 381.

within 60 days after the mailing of notice of such decisions. Other members of the class had not yet exhausted their administrative remedies. With respect to these plaintiffs, the Secretary asserted that the court lacked jurisdiction. She urged the court to exclude from the class all claimants who had not satisfied the requirements of timely appeal and exhaustion. In addition to challenging the composition of the class, the Secretary questioned the court's substantive ruling on the validity of her step two policies. She asked the court to reconsider this ruling in light of recent case law and the 1984 Congressional amendment of the Social Security Act.

After weighing all of these arguments, this court denied the Secretary's motion to alter or amend the previous summary judgment order. 607 F.Supp. 875 (N.D.Ill. 1984). First, the court considered and rejected the Secretary's jurisdictional attacks on the size of the class. The court found that the 60–day requirement imposed by 42 U.S.C. § 405(g) constituted a statute of limitations rather than a jurisdictional bar. Therefore, because the Secretary had not previously asserted an affirmative defense based on § 405(g), the court concluded that the Secretary had waived the 60–day requirement for all class members. *Id.* at 877–78. As for the exhaustion of administrative remedies, the court itself elected to waive this requirement. In the court's view, two factors justified judicial waiver of the exhaustion requirement in this class action suit: (1) plaintiffs' challenge to the Secretary's regulations was collateral to the class members' claims for benefits; and (2) plaintiffs had a substantial interest in prompt judicial review. *Id.* at 878–80. The court also refused to reconsider its ruling that the challenged regulations violated the Social Security Act. Recent case law and Congressional action, which the Secretary had cited as a basis for reconsideration, did nothing to alter the court's earlier analysis of the regulations. *Id.* at 880–81.

In an order dated March 15, 1985, the court clarified its award of injunctive relief,

providing the Secretary with detailed instructions for implementing the court-ordered remedy. 604 F.Supp. 1070 (N.D.Ill. 1985).[4] Under the terms of this order, the Secretary would bear the responsibility of identifying class members. In addition, the court required the Secretary to provide plaintiffs' counsel with monthly statistical reports documenting the implementation of the prescribed relief.

The Secretary appealed to the Seventh Circuit, challenging both the size of the class and the invalidation of the step two regulations. The Court of Appeals affirmed this court's jurisdictional and substantive rulings in all respects. 769 F.2d 1202 (7th Cir.1985), *vacated and remanded,* —— U.S. ——, 107 S.Ct. 3202, 96 L.Ed. 2d 690 (1987). After denying the Secretary's petition for rehearing, 776 F.2d 166 (7th Cir.1985), the Seventh Circuit granted a partial stay of injunctive relief on November 13, 1985. Pending the Secretary's filing of a petition for a writ of certiorari, the Court of Appeals stayed its mandate affirming the injunction insofar as it required the SSA to reopen closed cases.

In February 1986, the Secretary petitioned the U.S. Supreme Court for a writ of certiorari in the *Johnson* case. While this petition was pending, the Supreme Court upheld the facial validity of the Secretary's severity regulation in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Subsequently, the Court granted certiorari in *Johnson,* vacated the Seventh Circuit's judgment, and remanded the case to the Court of Appeals for further consideration in light of *Yuckert.* —— U.S. ——, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987).

On remand, the Seventh Circuit vacated this court's injunction to the extent that it prohibited application of step two of the Secretary's sequential evaluation process. 834 F.2d 173. The Court of Appeals then remanded the case to this court for further proceedings in light of *Yuckert.* Shortly thereafter, the parties to this litigation

---

**4.** In this same order, the court also denied two other motions by the parties: the Secretary's motion for a stay of injunctive relief pending appeal and plaintiffs' motion for a finding of civil contempt and sanctions.

commenced settlement discussions. Hopeful that these negotiations would produce a settlement, this court dismissed the *Johnson* case, retaining jurisdiction for 60 days in case the parties failed to reach agreement. When settlement talks broke down, plaintiffs moved for reinstatement of the case and entry of an order directing the Secretary to implement retroactive relief to class members.[5] The Secretary countered by moving to vacate the court's previous orders awarding injunctive relief to plaintiffs.

## DISCUSSION

■ The complex procedural history of this case belies the relatively simple question currently confronting this court: Does the Supreme Court's decision in *Yuckert* require modification of the injunctive relief previously awarded in *Johnson?* Under normal circumstances, this court would not bother to take a second look at a judgment it entered four years ago: "[A] court ordinarily will not reconsider its own decision made at an earlier stage of the trial or on a prior appeal, absent clear and convincing reasons to reexamine the prior ruling." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). In the instant case, however, the Seventh Circuit has explicitly instructed this court to reevaluate its earlier decision in light of a subsequent Supreme Court ruling. The "law of the case" doctrine dictates that "an inferior court must apply the decision of a superior appellate tribunal on remand." *Id.* Consequently, this court cannot simply rubber-stamp its earlier award of injunctive relief, but must reconsider the validity of that award in light of *Yuckert.* Only after assessing *Yuckert's* effect on this court's prior rulings can the court determine the scope of the appropriate remedy in *Johnson.*

## I. The Impact of *Yuckert* on This Court's Rulings in *Johnson*

In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court upheld the facial validity of the Secretary's severity regulation, reversing a Ninth Circuit ruling to the contrary. The Court rejected the Ninth Circuit's conclusion that the Social Security Act prohibits the denial of disability claims without consideration of vocational factors and residual functional capacity. Instead, the Court found that the Act authorizes the Secretary to require that claimants make a threshold showing of severity. Therefore, the Court reasoned, the severity regulation created no conflict with the authorizing statute; the Secretary could deny benefits solely on medical grounds without violating the Social Security Act. *Id.* at 2293–97. The Ninth Circuit had also asserted that the regulation improperly denied benefits to claimants who had established a *prima facie* case of disability. *Yuckert v. Heckler*, 774 F.2d 1365, 1370 (9th Cir.1985), *rev'd*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In response to this suggestion that the regulation had shifted the burden of proof, the Supreme Court tersely concluded: "The severity regulation does not change the settled allocation of burdens of proof in disability proceedings." *Yuckert*, 107 S.Ct. at 2294 n. 5.

The Supreme Court's decision in *Yuckert* provides an essential backdrop for the case now before this court. In order to comply with the Seventh Circuit's directive on remand, this court must assess the impact of *Yuckert* on the three major aspects of the *Johnson* judgment: (1) the invalidation of the severity standard as defined by the Secretary's regulations; (2) the invalidation of the Secretary's practice of refusing to combine nonsevere impairments; and (3) the rejection of the Secretary's jurisdictional challenges to the size of the class.

5. Plaintiffs have requested only retroactive relief. They concede that prospective injunctive relief is no longer appropriate in this case because of two subsequent developments. First, in order to comply with section 4 of the Social Security Disability Benefits Reform Act of 1984, 98 Stat. 1800 (1984), the Secretary has abandoned the practice of refusing to combine nonsevere impairments. Second, the Seventh Circuit has vacated this court's injunction prohibiting application of the severity regulation.

## A. The Severity Standard

When it entered summary judgment for the *Johnson* class in September 1984, this court ruled that the severity standard articulated by 20 C.F.R. §§ 404.1520(c) & 416.920(c) violated the Social Security Act. The court found that the severity regulation's substitution of the term "basic work activities" for "previous work" impermissibly increased the burden of proof on claimants who sought to establish a *prima facie* case of disability. *Johnson*, 593 F.Supp. at 378–81. One year later, in the case of Janet Yuckert, the Ninth Circuit essentially reiterated this court's finding. While never specifically denouncing the regulation's reference to "basic work activities," the Ninth Circuit questioned the regulation's effect on the claimant's burden of proof, concluding that the regulation "improperly denies benefits to a claimant who has made a prima facie showing of disability." *Yuckert*, 774 F.2d at 1370. In reversing the Ninth Circuit's decision, the Supreme Court clearly rejected the notion that the severity regulation had altered the burden of proof for disability claimants. *Yuckert*, 107 S.Ct. at 2294 n. 5. Thus, in light of the Supreme Court's holding in *Yuckert*, this court has no choice but to vacate its earlier invalidation of the severity standard.

In a desperate attempt to avoid this inevitable consequence of *Yuckert*, plaintiffs claim that this court's previous judgment went beyond a mere finding that the severity regulation was facially invalid. According to plaintiffs, the court also found that the Secretary had improperly applied the regulation. *See, e.g., Johnson*, 604 F.Supp. at 1075 (court found that severity standard was "improperly written *and applied*") (emphasis added). Plaintiffs contend that *Yuckert* does not disturb this court's ruling that the severity standard was wrongly applied. In fact, a majority of the Justices in *Yuckert* suggested that the SSA had frequently misapplied the regulation by requiring claimants to make a greater than *de minimis* showing of severity. *See Yuckert*, 107 S.Ct. at 2298–2300 (O'Connor, J., concurring); *id.* at 2310 (Blackmun, J., dissenting); *see also Brown v. Bowen*, 827 F.2d 311, 312 & n. 1 (8th Cir.1987) (majority of Justices in *Yuckert* adopted a *de minimis* severity standard). Moreover, following the Supreme Court's remand of *Yuckert*, the Ninth Circuit determined that the ALJ in Yuckert's case had improperly applied the facially valid severity regulation by requiring more than a minimal showing of severity. *Yuckert v. Bowen*, 841 F.2d 303, 306–07 (9th Cir.1988). Plaintiffs urge this court to follow the Ninth Circuit's lead by fashioning a remedy based on the improper application of the severity standard.

Plaintiffs' argument seriously mischaracterizes this court's prior ruling that the Secretary had improperly applied the severity regulation. Plaintiffs imply that this finding of improper application did not hinge on the facial invalidity of the statute. This is simply not the case. When it struck down the regulation in 1984, this court rejected the hypothesis "that the conflict between the statutory definition [of disability] and the severity regulation stems from an overbroad interpretation of the regulation by the Secretary." *Johnson*, 593 F.Supp. at 381. Instead, the court concluded: "The conflict stems from the regulation itself. . . ." *Id.* Based on this rationale, the court found that *any* application of the severity regulation was improper due to the regulation's inherent invalidity. Thus, the court's finding of improper application rested squarely on its conclusion that the severity regulation was facially invalid—a conclusion completely undermined by *Yuckert*. For this reason, the court declines to grant relief to the plaintiff class based on the improper application of the severity standard. Moreover, the court denies plaintiffs' request for discovery in order to monitor the Secretary's adherence to a *de minimis* severity standard.[6]

6. In denying this relief, the court does not mean to suggest that the Secretary has uniformly applied the appropriate severity standard when evaluating disability claims. Frankly, the court has little doubt that the SSA has not consistently applied a *de minimis* severity standard in each individual case. *See, e.g., Yuckert*, 107 S.Ct. at 2299 (O'Connor, J., concurring) (statistical evidence strongly suggests misapplication); *Yuckert*, 841 F.2d at 306–07 (ALJ misapplied the

## B. The Refusal to Combine Nonsevere Impairments

■ At the same time that this court found the severity regulation facially invalid, the court also struck down the regulations that proscribed consideration of the combined effect of nonsevere impairments. *Johnson*, 593 F.Supp. at 381. The court ruled that these regulations violated the Social Security Act. Because the Act defines disability in terms of "impairment or impairments," both this court and the Seventh Circuit concluded that the Act mandates the evaluation of all impairments in combination. *Johnson*, 769 F.2d at 1213–14; *Johnson*, 593 F.Supp. at 381. The Supreme Court's opinion in *Yuckert* did not even discuss the propriety of the Secretary's previous refusal to combine nonsevere impairments. Absent explicit Supreme Court approval of this dubious practice, this court sees no reason to disturb its earlier invalidation of the noncombination policy mandated by 20 C.F.R. §§ 404.1522 & 416.922 and SSR 82–55.

The Secretary implores this court to reassess its ruling concerning the combination of nonsevere impairments, even though *Yuckert* did not address the issue. In support of this request for reconsideration, the Secretary does little more than reiterate the same arguments previously proffered in defense of the noncombination regulations. In the eyes of this court, these arguments are no more compelling now than they were four years ago. At this stage of the litigation, the Secretary raises only one new issue that might justify re-

consideration. He points to *Yuckert's* analysis of 42 U.S.C. § 423(d)(2)(A), the provision of the Social Security Act that defines disability in terms of "impairment or impairments." In discussing section 423(d)(2)(A), the Supreme Court stated: "The words of this provision limit the Secretary's authority to grant disability benefits, not to deny them." *Yuckert*, 107 S.Ct. at 2294. This court had earlier concluded that this same provision requires the Secretary to combine nonsevere impairments when evaluating severity. The Secretary contends that in light of *Yuckert*, this court can no longer interpret section 423(d)(2)(A) in a manner that limits the Secretary's discretion to deny benefits. This argument ignores the limited context in which the *Yuckert* Court analyzed the Social Security Act. In *Yuckert*, the Court held that the Act does not require the Secretary to consider vocational factors when a claimant's impairment does not meet the threshold severity standard. In reaching this conclusion, the Court analyzed and narrowly construed section 423(d)(2)(A) only insofar as that provision refers to consideration of vocational factors. The Court observed that the legislative history of the provision emphasized "the predominant importance of medical factors in the disability determination." *Id.* at 2294–95 (quoting S.Rep. No. 744, 90th Cong., 1st Sess. 48 (1967) U.S.Code Cong. & Admin. News 1967, p. 2834). This court's ruling on the combination of impairments is entirely consistent with *Yuckert's* analysis of the legislative history of section 423(d)(2)(A). The injunction in *Johnson* did

severity regulation by requiring claimant to make more than a minimal showing of severity). During the course of this litigation, however, this court has never made a specific finding of misapplication in individual cases; nor does the court intend to make such a ruling on remand, as the Ninth Circuit did in *Yuckert*. Given the nature of class action litigation, the court could not make this sort of fact-specific ruling without jeopardizing the existence of the *Johnson* class. Unlike the court's previous determination of uniformly improper application, a finding of misapplication in particular cases would transform this lawsuit into a myriad of individualized inquiries. Under this scenario, the particular circumstances of individual disability claims would overshadow the common

questions of law and fact needed to sustain a class action. *See* Fed.R.Civ.P. 23(a)(2).

Clearly, a class action lawsuit does not provide an appropriate means of challenging the random misapplication of a facially valid severity regulation. Nonetheless, other avenues for obtaining relief remain open to plaintiffs. Based on the Secretary's previous refusal to consider the combined effect of nonsevere impairments, most of the *Johnson* class members will soon receive new disability hearings. Following these hearings, if a class member believes that the SSA has subjected his claim to a greater than *de minimis* severity standard, he can most effectively challenge this misapplication by appealing from the denial of his own individual claim.

not introduce any nonmedical factors into the severity calculus; rather, the court simply ordered the Secretary to make a more comprehensive assessment of the medical factors that Congress considered so essential to the disability determination.

Having examined *Yuckert's* discussion of section 423(d)(2)(A), this court must reject the Secretary's skewed interpretation of *Yuckert's* statutory analysis. The court feels no compulsion to alter its position on the Secretary's noncombination policy, particularly since *Yuckert* never even discussed the policy. The court remains convinced that the Secretary's previous refusal to combine nonsevere impairments contravened the Social Security Act.

### C. Jurisdictional Challenges to the Size of the Class

■ Several months after entering summary judgment for the *Johnson* class, this court rebuffed the Secretary's jurisdictional challenges to the size of the class. The Secretary argued that the class should not include claimants who had failed to comply with the 60–day filing requirement imposed by 42 U.S.C. § 405(g). The court, however, found that the Secretary had waived the 60–day requirement in this case. *Johnson,* 607 F.Supp. at 877–78. The Secretary also urged the court to exclude from the class all claimants who had not exhausted their administrative remedies pursuant to § 405(g). Instead, the court determined that the nature of plaintiffs' claims justified judicial waiver of the exhaustion requirement. *Id.* at 878–80.

The Secretary now asks this court to reconsider its refusal to enforce the procedural requirements articulated by § 405(g). The *Yuckert* opinion, however, made no mention of § 405(g). Thus, in mounting his current challenge to the composition of the class, the Secretary is basically raising the same jurisdictional arguments that his predecessor made four years ago.[7] Unfortunately for the Secretary, these arguments have grown less persuasive with the passage of time. Two years ago, the Su-

preme Court's decision in *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), vindicated this court's previous refusal to reduce the size of the *Johnson* class. In *City of New York,* the Supreme Court confirmed what this court had earlier concluded: The 60–day requirement embodied in § 405(g) constitutes a statute of limitations that can be waived, not an inflexible jurisdictional constraint. *Id.* at 478, 106 S.Ct. at 2029. In addition, the Court in *City of New York* endorsed judicial waiver of the exhaustion requirement in cases involving a challenge to a systemwide policy. *Id.* at 483–85, 106 S.Ct. at 2031–32. Thus, *City of New York* effectively ratified this court's prior decision to waive exhaustion in *Johnson.* Bolstered by *City of New York,* this court once again rejects the Secretary's jurisdictional objections to the composition of the *Johnson* class. The class shall continue to include claimants who did not satisfy the requirements of timely appeal and exhaustion—requirements that have been waived in the context of this litigation.

### II. The Appropriate Remedy upon Reconsideration

■ This court first granted injunctive relief to the *Johnson* class in 1984. Reconsidering this remedy in light of subsequent events, the court has decided to modify its previous award in three respects. First, now that the Supreme Court has upheld the facial validity of the Secretary's severity standard, this court must vacate its previous orders insofar as they award injunctive relief based on the invalidity of the severity regulation. Second, since the 1984 Social Security amendments now require the Secretary to consider the combined effect of all impairments, the court vacates its prospective injunction of the Secretary's refusal to combine nonsevere impairments. Obviously, the court does not need to enjoin a practice that the Secretary has discontinued. Finally, this court vacates all provisions of its previous orders that require the Secretary to provide plaintiffs' counsel with evidence of compliance. For the past

7. Admittedly, the Secretary has advanced some new arguments in support of reducing the size of the class. These arguments, however, focus solely on the possibility that the class would obtain relief based on the misapplication of the severity standard. By denying such relief, this court has rendered the Secretary's new jurisdictional arguments moot.

two years, the Secretary has supplied plaintiffs' counsel with monthly statistical reports. These reports document the implementation of the injunctive relief that the Seventh Circuit did not stay. The statistical reports indicate that the Secretary is already making good faith efforts to comply with this court's orders. The court feels confident that the Secretary will show the same diligence in implementing the retroactive relief authorized by this order. Consequently, in light of the Secretary's past conduct, the court questions the need for continued monitoring of compliance. Besides, as the Secretary confronts the formidable task of reassessing the disability claims of 90,000 class members, the additional burden of producing compliance reports would only hinder the Secretary's efforts to provide substantive relief to the class. For these reasons, the court will no longer require the Secretary to provide plaintiffs' counsel with monthly reports or other evidence of compliance.[8]

Aside from these three modifications, the court's previous award of injunctive relief remains intact. Having made a final determination of the appropriate remedy in this case, the court will not tolerate any further delay in the Secretary's implementation of relief. For the class members, most of whom are elderly, time is precious. Many of the plaintiffs have waited several years to receive a fair hearing on their disability claims. They should not have to wait any longer.

## CONCLUSION

For the foregoing reasons, this court grants plaintiffs' motion to reinstate. Following a stay by the Seventh Circuit, this court now reinstates its previous award of injunctive relief with the following modifications:

(1) The court vacates its previous orders insofar as they award injunctive relief based on the invalidity of the severity regulation.

(2) The court vacates its prospective injunction of the Secretary's refusal to combine nonsevere impairments.

(3) The court vacates all provisions of its previous orders that require the Secretary to provide plaintiffs' counsel with evidence of compliance.

In addition, the court directs the Secretary to commence implementation of the modified injunctive relief. The Secretary must now identify all claimants or recipients whose benefits were denied or terminated at step two of the five-step eligibility test, and whose multiple nonsevere impairments were not considered in combination pursuant to 20 C.F.R. §§ 404.1522 & 416.922 and SSR 82–55. After identifying these class members, the Secretary must implement the three-part remedy previously ordered by this court: (1) holding new disability hearings for class members— hearings that provide for consideration of the combined effect of all impairments; (2) reinstating benefits pending the new hearings to class members whose benefits were terminated; and (3) granting retroactive benefits to class members who, after a new hearing, are found to be disabled. The court instructs the Secretary to implement this relief posthaste.

IT IS SO ORDERED.

---

8. Of course, in the event that the Secretary does not comply with this court's orders, plaintiffs may move for reinstatement of the monitoring procedures previously established by this court.