Edna JOHNSON and Jerome Montgomery, Plaintiffs–Appellees,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellant.

No. 89–2676.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1989.

Reargued En Banc Nov. 27, 1990.

Issued Dec. 28, 1990.

Order on Denial of Rehearing and Rehearing En Banc March 20, 1991.

John M. Bouman, Robert E. Lehrer, Theodora Rand, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff-appellee.

Anton R. Valukas, U.S. Atty., Linda A. Wawzenski, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, Ill., Robert S. Greenspan, Frank A. Rosenfeld, Dept. of Justice, Civ. Div., Appellate Section, Washington, D.C., for defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS, WOOD, Jr., CUDAHY, POSNER, COFFEY, EASTERBROOK, RIPPLE, MANION and KANNE, Circuit Judges.*

BAUER, Chief Judge.

This class action challenging various regulations and policies of the Secretary of Health and Human Services (the "Secretary") is now in its eighth year. In 1983, plaintiffs originally filed suit claiming that the Secretary's "severity regulation," the second step in a five-step disability screening analysis, violated the plain terms of the Social Security Act (the "Act"). Beyond this, the plaintiffs contended that the Secretary's policy of not considering the combined effects of non-severe impairments (the "no-combination" policy) also was contrary to the language and intent of the Act. In our first encounter with this case, we affirmed the district court's injunction against the use of either regulation. *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985) (*"Johnson I"*). Upon reviewing a similar challenge in a case from the Ninth Circuit, however, the Supreme Court held the severity regulation facially valid as a *de minimis* screening device, *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1989), and therefore vacated our opinion for redetermination in light of this decision. *See Bowen v. Johnson*, 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987). Following our remand, 834 F.2d 173 (7th Cir. 1987), the district court held that although the severity regulation must now be accepted as a valid *de minimis* screening device, the *Yuckert* decision did not affect the reasoning or the holding of its injunction against the Secretary's no-combination policy. 697 F.Supp. 346 (N.D.Ill.1988), *clarified at* 714 F.Supp. 1476 (N.D.Ill.1989). We now review the Secretary's various challenges to this decision. For the following reasons, we affirm the district court on the merits, but reverse as to the proper composition of the plaintiff class and remand with instructions.

---

* Judge Flaum of this court sat at oral argument before the initial panel in this case on November 3, 1989. Since that time, Judge Flaum recused himself from any involvement in the case.

Judge Flaum took no part in the decision to consider this case *en banc,* nor in this court's subsequent *en banc* consideration and disposition.

## I. BACKGROUND

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income ("SSI") program. 42 U.S.C. § 1382(a). Under either title, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. §§ 423(d)(1)(A) & 1382(c)(3)(A). The Secretary of Health and Human Services has authority to promulgate various regulations in order to make such determinations. 42 U.S.C. §§ 405(a) & 1383(d)(1). Since 1976, the Secretary has used a five-step sequential inquiry to determine whether a person is disabled and therefore entitled to benefits. 20 CFR §§ 404.1520 & 416.920 (1983).[1]

Step two of the evaluation process examines whether a claimant's impairment is "severe." The regulation provides:

> If you do not have any impairment *or combination of impairments* which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 CFR §§ 404.1520(c) & 416.920(c) (emphasis added). If the claimant is determined not to suffer from a severe impairment, then disability benefits are denied. If the impairment is severe, however, the evaluation continues through three additional levels of analysis.

On August 20, 1980, the Secretary issued a list of impairments that were automatically considered to be nonsevere. SSR–82–55. Examples of *per se* non-severe impairments in the list included: osteoarthritis, hypertension, history of chest pain, colostomy, peptic ulcer, chronic liver disease, chronic renal disease, diabetes mellitus, epilepsy, and IQ of 80 or greater. *Id.* The Secretary also amended the procedure under step two by stating that she would "consider the combined effects of unrelated impairments only if all were severe." 45 Fed.Reg. 55574 (1980) (codified at 20 CFR § 404.1522 (1983)).

An initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. §§ 421(a) & 1383b(a); 20 CFR §§ 404.1503 & 416.903 (1986). If the state agency denies a claim for benefits, the claimant may pursue a three-stage administrative review process. *See Bowen v. Yuckert*, 482 U.S. at 142, 107 S.Ct. at 2291. First, the state agency reconsiders the determination *de novo*. 20 CFR §§ 404.-909(a) & 416.1409(a). Second, the claimant may request a hearing before an administrative law judge ("ALJ") within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1) & 1383(c)(1); 20 CFR §§ 404.-929, 416.1429 & 422.201 *et seq.* (1986). Third, the claimant may seek review of the ALJ's determination before the Appeals Council. 20 CFR §§ 404.967 & 416.1467. After exhausting this administrative process, a dissatisfied claimant may seek review of the determination in federal district court. 42 U.S.C. § 405(g). *See Bowen v. City of New York*, 476 U.S. 467, 472, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1986).

## II. PROCEDURAL HISTORY

This opinion represents the tenth time a court has written on this case. The district court carefully retraced the path of this cyclone at 697 F.Supp. 346–50, and we will not duplicate that effort. Nevertheless, some knowledge of the tortured procedural route of this case is needed to understand its current posture.

In 1982, Edna Johnson sought disability benefits under Title XVI of the Social Se-

---

**1.** For a complete description of this five-step process, *see Johnson v. Heckler*, 593 F.Supp. 375, 377–78 (N.D.Ill.1984). *See also Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

curity Act, the SSI program. In a separate action, Jerome Montgomery pursued a claim under Title II, the Old–Age and Survivors Disability Insurance ("OASDI") program. That year, the Appeals Council of the Social Security Administration, applying the five-step process, rejected both claims. Neither claim survived the step two severity regulation. In 1983, Johnson and Montgomery filed suit in the Northern District of Illinois challenging several aspects of the Secretary's regulations concerning the determination of a disability. Their complaint subsequently was amended to maintain their suit as a class action pursuant to Fed.R.Civ.P. 23. On December 7, 1983, Judge Bua certified the proposed class, which included all persons in Illinois whose applications for benefits were denied or terminated due to the application of the step two severity regulation. 100 F.R.D. 70 (N.D.Ill.1983).

In an opinion issued September 19, 1984, Judge Bua granted plaintiffs' motion for summary judgment on their complaint. *Johnson v. Heckler,* 593 F.Supp. 375. Judge Bua found the severity regulation to be facially invalid and inconsistent with the Social Security Act, as it impermissibly increased the claimant's burden of proof. In addition, the plaintiffs contended, and Judge Bua found, that the supplemental regulations that barred consideration of the combined effects of any impairment defined as "non-severe" conflicted with the terms of the Act. The court entered an injunction barring further enforcement of the challenged regulations. Beyond this, Judge Bua ordered new disability hearings for class members, payment of retroactive benefits to claimants who were now determined to be disabled, and reinstatement of benefits terminated by the improper regulations. *Id.* at 378–82. The court subsequently rejected the Secretary's attempts to amend the judgment by challenging the size of the plaintiff class. 607 F.Supp. 875, 878–881 (N.D.Ill.1984). On appeal, this

court affirmed the orders in all respects. *Johnson I,* 769 F.2d 1202, *rehearing denied,* 776 F.2d 166 (7th Cir.1985).

On June 8, 1987, while the Secretary's petition to the Supreme Court was pending, the Court issued its decision in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, upholding the facial validity of the step-two severity regulation. The Court then granted certiorari on *Johnson I,* vacated this court's opinion, and remanded the case for redetermination in light of its decision in *Yuckert.* 482 U.S. 922, 107 S.Ct. 3202, 96 L.Ed.2d 690 (1987). We vacated that portion of the district court's injunction prohibiting the Secretary's application of the step-two severity regulation. 834 F.2d 173. We then remanded the remainder of the case to the district court for redetermination of the issues consistent with *Yuckert.*[2]

On remand, in its order of October 6, 1988, the district court noted that "the Supreme Court (has) clearly rejected the notion that the severity regulation had altered the burden of proof for disability claimants." *Johnson v. Bowen,* 697 F.Supp. 346, 351 (N.D.Ill.1988). Judge Bua stated that his earlier decision enjoining the use of the severity regulation was based on his belief in its "inherent invalidity." Thus, he recounted that his earlier decision had found "that *any* application of the severity regulation was improper." *Id.* (emphasis in original). Judge Bua concluded that his earlier "finding of improper application rested squarely on [his] conclusion that the severity regulation was facially invalid—a conclusion completely undermined by *Yuckert.* For this reason, the court declines to grant relief to the plaintiff class based on the improper application of the severity standard." *Id.*

Judge Bua refused, however, to reverse his determination that the Secretary's no-combination policy contravened the Social Security Act. He stated that he felt "no compulsion to alter [his] position ... particularly since *Yuckert* never even discussed the policy." 697 F.Supp. at 353. "Absent

**2.** Both plaintiffs and the Secretary have raised a number of "law of the case" arguments challenging the scope of our remand and the limits of our opinion today. We hold that because we remanded the case in its entirety following the Supreme Court's decision in *Yuckert,* the entire matter is open to review. Therefore, our consideration of the matter today is not limited by our holding in *Johnson I.* We note, however, that our analysis in that opinion remains as cogent and persuasive as ever.

explicit Supreme Court approval of this dubious practice, this court sees no reason to disturb its earlier invalidation of the [no-]combination policy mandated by 20 CFR §§ 404.1522 & 406.922 and SSR 82–55." 697 F.Supp. at 352.

On remand, the Secretary again raised jurisdictional challenges to the size of the plaintiff class. The Secretary argued, as before, that the procedural requirements of 42 U.S.C. § 405(g) demanded administrative exhaustion and strict application of the 60–day statute of limitations for a judicial appeal. The district court rejected these arguments as it had four years earlier. 697 F.Supp. at 353. In addition, in the interim the Supreme Court had decided *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), in which the Court allowed judicial waiver of both the exhaustion and 60–day requirements. Thus, Judge Bua stated, "Bolstered by *City of New York*, this court once again rejects the Secretary's jurisdictional objections to the composition of the *Johnson* class." 697 F.Supp. at 353.

Despite the apparent finality of this decision, both sides soon appeared again before Judge Bua after negotiations regarding the details of the relief order reached an impasse. The parties asked Judge Bua to consider the scope of the redetermination hearings and, yet again, the jurisdictional limits on the size of the plaintiff class. In response, in an opinion dated June 16, 1989, the district court held that the Secretary, pursuant to his own regulations, must redetermine all claims from the date of each plaintiff's original application for benefits up to the present time. 714 F.Supp. 1476 (N.D.Ill.1989). The court also held that the Secretary's jurisdictional challenges to the size of the class would be no more successful than in the past, despite the Supreme Court's discussion of similar issues in *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988). 714 F.Supp. at 1483–85. The Secretary has now appealed once again to this court.

### III. THE NO–COMBINATION POLICY

Although the Supreme Court in *Yuckert* held that the severity regulation was facially valid, thus undermining the first premise of the district court's ruling, the Court did not reach the Secretary's practice of refusing to consider non-severe impairments in combination. Reviewing this history, the district court stated, "Absent explicit Supreme Court approval of this dubious practice, this court sees no reasons to disturb its earlier invalidation of the [no-]combination policy[.]" 697 F.Supp. at 352. We agree.

In *Johnson I*, we affirmed the district court's original invalidation of the no-combination policy. 769 F.2d at 1213–15. We based this determination on both the plain language of the Social Security Act and the legislative history of subsequent clarifying amendments passed by Congress in 1984. *Id.* After reviewing this discussion in light of the Supreme Court's holding in *Yuckert*, we continue to find these arguments persuasive.

Since 1967, the Social Security Act has required the Secretary to find a claimant disabled "if his physical or mental impairment *or impairments* are of such severity that he is not only unable to do his previous work, but cannot ... engage in any other kind of substantial work." 42 U.S.C. § 423(d)(2)(A) (emphasis added). Moreover, the Act describes a physical or mental impairment as one that "results ... from *abnormalities* ... demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(C) (emphasis added). Thus, Congress, by explicitly discussing multiple "impairments" and "abnormalities," recognized that a combination of maladies may constitute a disability.

The Secretary's 1980 decision no longer to consider the combined effects of non-severe impairments rejected more than a decade of Social Security policy. As the First Circuit noted in *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1127 (1st Cir.1986), comparing the text of the Act to the Secretary's regulations:

The first set of regulations implementing this definition similarly spoke in

terms multiple impairments, and recognized that an individual could be disabled by one impairment. *See* 20 C.F.R. § 404.1501(a)(1) (1969); 20 C.F.R. § 404.1502(a), (b) [ & ] (c) (1969). As the Supreme Court has observed, the "contemporaneous administrative construction of [a statute] is persuasive evidence of the original understanding[.] *United States v. Sheffield Board of Commissioners,* 435 U.S. 110 [98 S.Ct. 965, 55 L.Ed.2d 148] (1978).

Our determination of congressional intent on this issue is buttressed by the legislative history to the 1984 amendments to the Social Security Act. *See* The Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, 98 Stat. 1794. These amendments expressly required the Secretary to consider the combined effects of non-severe impairments. The legislation, however, was expressly clarifying and did not represent a change in the law. As the House Committee Report stated, "[S]ections 101–103 of the bill are designed to *clarify* the criteria that must be used in evaluating whether new applicants of current beneficiaries are disabled. The criteria laid out in present law are few and brief." H.REP. No. 98–618, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.CODE CONG. & AD.NEWS, 3038, 3043 (emphasis added). The Report goes on to state:

> The committee emphasizes that the foregoing discussion does not constitute any change in the current definition of disability, but rather is a *clarification* of the intent of Congress that disability benefits should be granted to those who are unable to work because of a medically determinable impairment. Sections 101 and 103 of the bill provide statutory standards for determining disability.

*Id.* at 3046 (emphasis added). Thus, given this clear directive that these amendments were intended to clarify the Act, rather than change earlier law, the congressional decision to require consideration of combined non-severe impairments can only be viewed as a repudiation of the Secretary's policy.[3]

The Secretary now argues that, despite the plain language of the Act and Congress' subsequent discussion in passing the 1984 clarifying amendments, the Supreme Court in *Yuckert* implicitly approved the no-combination policy. Specifically, the Secretary points to the Court's analysis of 42 U.S.C. § 423(d)(2)(A), the provision of the Act which defines disability in terms of "impairment or impairments." In discussing this section, the Court stated, "The words of this provision limit the Secretary's authority to grant disability benefits, not to deny them." *Yuckert,* 482 U.S. at 148, 107 S.Ct. at 2294 (footnote omitted). The Secretary contends that this discussion indicates that § 423(d)(2)(A) is no longer relevant to whether a claimant meets the severity requirement of step two. Such a reading is mistaken.

As the Secretary acknowledges, the discussion of § 423(d)(2)(A) in *Yuckert* concerned whether this section imposed an affirmative obligation on the Secretary to apply at step two the vocational criteria listed under that provision. The Court determined that such vocational criteria could be considered at a later step in the process. 482 U.S. at 147–49, 107 S.Ct. at 2294–95. The Court did not, however, discuss the Secretary's refusal to consider the combined effects of non-severe impairments. The discussion in *Yuckert* only applies to the consideration of vocational effects— these may be analyzed by the Secretary at a later stage in the process. This discussion did not address, nor affect, the Secretary's duty to analyze *medical* factors in determining the severity of a disability.

Further, in *Yuckert,* the Court responded to the accusation that under its opinion, the Secretary was granted unlimited authority to deny meritorious claims. As the Court

---

**3.** The Secretary nevertheless contends that because Congress did not include a clause making these new amendments retroactively applicable, Congress did not intend to allow claimants to pursue claims such as these. This logic, however, was rejected by the Supreme Court in *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). There, the Court stated, "It would be a perverse view of Congressional intent if we were to infer from this beneficial legislation [the 1984 clarifying amendments] a determination on the part of Congress to deny ... disability claimants the fruits of a judgment entered in their favor after a ruling that their claims had been unlawfully processed by the Secretary." *Id.* at 486 n. 14, 106 S.Ct. at 2033 n. 14.

stated, "It hardly needs saying that our opinion carries no such implication." 482 U.S. at 148 n. 6, 107 S.Ct. at 2294 n. 6. In light of the Secretary's arguments to this court, it is apparent that the Court's refusal to endorse such unlimited authority not only "needs saying," but needs repeating at regular intervals. Nothing in *Yuckert* undercuts our holding in *Johnson I* that the Secretary's policy of refusing to consider the combined effects of non-severe impairments contravened the Social Security Act. The district court has properly labeled this policy "dubious." The First Circuit determined that "[i]t seems simply a matter of common sense that various physical, mental, and psychological defects, each non-severe in and of itself, might in combination, in some cases, make it impossible for a claimant to work." *McDonald,* 795 F.2d at 1127. We hold today, as we did five years ago, that this policy is arbitrary and capricious and that, therefore, the district court properly enjoined the use of the no-combination policy mandated by 20 C.F.R. §§ 404.1522 & 416.922 and SSR 82–55 in determining the disability of claimants in this class action.

## IV. CHALLENGES TO THE CLASS CERTIFICATION

The Secretary again argues to this court that the size of the plaintiff class is overstated because it includes claimants over whom the district court had no jurisdiction. In particular, the Secretary challenges the inclusion of those individuals who failed to exhaust their administrative remedies and those who did not seek judicial review of their claims within 60 days of receiving a final administrative decision. We rejected these contentions in *Johnson I,* 769 F.2d at 1207–09. The Secretary now urges us to reconsider our determination in light of two subsequent Supreme Court decisions: *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); and *Pittston Coal Group v. Sebben,* 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988).

Under *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979), every member of a class action must independently satisfy the requirements of suit. Federal jurisdiction for suits such as this one is established by 42 U.S.C. § 405(g). This section provides:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

As the Secretary contends, two cornerstones of this provision are the final decision requirement and the 60–day statute of limitations for commencement of actions. We must consider each of these elements individually.

### A. The Final Decision Requirement

Under 42 U.S.C. § 405(g), a plaintiff must receive a final decision from the Secretary before seeking judicial review of his claim. In order to obtain a final decision from the Secretary, a plaintiff must exhaust his administrative remedies by proceeding through all three stages of the administrative process, *see supra* at 348, and then seek judicial review of his claim. *See Bowen v. City of New York,* 476 U.S. at 482, 106 S.Ct. at 2031. As interpreted by the Supreme Court, this "final decision" requirement, however, consists of two elements. The first element requires that a claim be filed with the Secretary. This is a jurisdictional requirement and may not be waived. *See Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). The second element is that a claimant exhaust his administrative remedies before seeking judicial review. This requirement is not jurisdictional in nature, but may be waived by the Secretary or by a court. *City of New York,* 476 U.S. at 483, 106 S.Ct. at 2031. As the Court noted in *Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976), "[c]ases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate."

Waiver of the exhaustion requirement is appropriate only where (1) the plaintiffs' suit involves a collateral attack rather than one on the merits, and (2) the plaintiffs' interest in prompt judicial review is so com-

pelling that deference to the agency's determination is inappropriate. *See City of New York*, 476 U.S. at 483, 106 S.Ct. at 2031 (citing *Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900). *See also Johnson I*, 769 F.2d at 1207. As the Court noted in *City of New York*, however,

> application of the exhaustion doctrine is "intensely practical." ... The ultimate decision of whether to waive exhaustion should not be made by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement.

476 U.S. at 484, 106 S.Ct. at 2032 (quoting *Eldridge*, 424 U.S. at 331, n. 11, 96 S.Ct. at 901 n. 11).

In *Johnson I*, we held that the plaintiffs had all met the *sine qua non* requirement of having filed a claim, thus satisfying the only truly jurisdictional component of the finality test. 769 F.2d at 1208. This factor remains unchanged today. Our only remaining determination is whether judicial waiver of the exhaustion requirement is called for under the circumstances presented here.

 First, we must determine whether plaintiffs' claims are collateral attacks and not merely a challenge on the merits. Our decision invalidating the Secretary's no-combination policy will mean that some claimants will now receive the benefits they were once denied. For other claimants, the invalidation of the policy will make no difference. They will not be entitled to benefits under any standard. Thus, the plaintiffs' attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of their benefits. Their challenge to the policy rises and falls on its own, separate from the merits of their claims for benefits.

Of course, if we had determined that the no-combination policy was not invalid, these plaintiffs would never have had an opportunity to present their claims for a second time. Through such a prism, the claims may appear to be bound up with the merits. This is mere sophistry. Any attack which, if accepted by the court, would allow an individual a second determination will re-

quire the Secretary to review the merits of the plaintiffs' claims another time. This was precisely what the plaintiffs in *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, sought— the right to a pre-termination hearing. Presumably this hearing, had the Court determined that one was required, would have discussed the merits of the case. The question, thus, is not whether another consideration of the merits of plaintiffs' claims would be required by our decision, but rather whether plaintiffs' challenge to the Secretary's policy is bound up with the merits so closely that our decision would constitute "interference with agency process." *Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466. Here, the plaintiffs' challenge to the Secretary's no-combination policy is sufficiently collateral to warrant judicial waiver of the exhaustion requirement.

The second consideration of the *Eldridge* waiver inquiry is whether the plaintiffs' interest in prompt judicial review is so great that deference to the agency's judgment is inappropriate. 424 U.S. at 328–30, 96 S.Ct. at 899–900. In *City of New York*, the Secretary had established a system-wide, clandestine policy for determining mental disability that was inconsistent with established regulations. The Court held that the aggrieved claimants' interest in prompt review outweighed the necessity for the usual deference to the agency's internal procedures, thus judicial waiver of the exhaustion requirement was appropriate. 476 U.S. at 485, 106 S.Ct. at 2032. The Court determined that exhaustion would have been futile in the face of such a policy, and that the claimants would suffer irreparable damage from being forced to exhaust these remedies. *Id.* Moreover, strict adherence to the exhaustion requirement would provide little new information to the court, as "there was nothing to be gained from permitting the compilation of a detailed factual record, or from agency expertise." *Id.*

The facts of the instant case, however, differ in two respects from those of *City of New York*. The first, and lesser, difference is that *City of New York* involved a policy affecting claimants with mental disabilities, not physical ones. The Supreme Court's concern in *City of New York* for those suffering from mental disabilities

does not, however, mark the boundary for any consideration of the potential hardships suffered by Social Security claimants. Indeed, it goes without saying that those with physical disabilities of such severity that they cannot work suffer every bit as much as those with similarly disabling mental impairments from needless and futile exhaustion of administrative requirements. *See* 476 U.S. at 483–84, 106 S.Ct. at 2031–32.

The second, and more germane, difference is that in *City of New York* the Secretary had promulgated an unpublished, clandestine policy about which the claimants there could not have known. This feature of *City of New York* was highlighted in *Pittston Coal Group v. Sebben*, 488 U.S. 105, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), in which the Supreme Court refused to order mandamus in a suit for black lung benefits under 30 U.S.C. § 932(a) for those claimants who had not exhausted their administrative remedies. There the Court stated:

> We do not believe that *Bowen v. City of New York*, 476 U.S. 467 [106 S.Ct. 2022, 90 L.Ed.2d 462] (1986), upon which the *Sebben* respondents place principal reliance, has any bearing upon the present case. There, we held that the application of a secret, internal policy by the Secretary of Health and Human Services in adjudicating Social Security Act claims equitably tolled the limitations period for seeking administrative or judicial review.... Even assuming that equitable tolling is available under the Longshore and Harbor Workers' Compensation Act, the conditions for applying it do not exist. The agency action here was not taken pursuant to a secret, internal policy, but under a regulation that was published for all to see. If respondents wished to challenge it they should have done so when their cases were decided.

*Sebben*, 488 U.S. at 123, 109 S.Ct. at 425 (citation omitted).

█ Although *Sebben* did not involve a suit pursuant to § 405(g) but rather a suit for mandamus under 30 U.S.C. § 932(a), and the Supreme Court observed in *Sebben*, "[t]he extraordinary remedy of mandamus will ... issue only to compel the performance of 'a clear nondiscretionary duty,'" 488 U.S. at 121, 109 S.Ct. at 423 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984)); and although the Court's discussion of *City of New York* in *Sebben* refers to the equitable tolling of the period of limitations rather than to the exhaustion requirement under § 405(g), we do not think that *Sebben* can be persuasively distinguished on these grounds. The rationale of *Sebben*—to which, of course, we must pay careful heed—is not lost in the procedural differences between that case and this one. In *Sebben*, the Eighth Circuit had interpreted *City of New York* broadly, holding that judicial waiver of the administrative exhaustion requirement, an issue is to be determined by a "pragmatic," case-by-case basis, could be found because "[t]he circumstances of this case reveal that deference to the agency is not appropriate." *In re Sebben*, 815 F.2d 475, 482–83 (8th Cir.1987). The Supreme Court reversed. It rejected the lower court's "pragmatic" decision selectively to relax the exhaustion rule in the face of a published policy. We must do likewise.

In so holding, we agree with the Third Circuit's analysis in *Bailey v. Sullivan*, 885 F.2d 52, 63–64 (3d Cir.1989). In *Bailey*, the court held that the failure of certain claimants—all of whom were challenging the same no-combination policy at issue here—to exhaust the remedies provided by the Social Security Act before the class action was filed barred them from membership in the plaintiff class. "The combination policy was openly applied and, as *Pittston Coal* suggests, plaintiffs' rights would have been vindicated by seeking judicial review at the time their claims were decided. Absent governmental conduct which prevented plaintiffs from recognizing that they had a valid claim, *City of New York* does not require a different result." *Bailey*, 885 F.2d at 64.

Further, the distinction drawn by *Sebben*, *Bailey* and this court today makes good sense. When an agency acts in accordance with a secret regulation, an applicant or claimant cannot as a practical matter use the administrative process to challenge the regulation, and so exhaustion is

excused as futile. That was *City of New York*. When, as in *Sebben*, *Bailey* and this case, an agency acts in accordance with "a regulation that was published for all to see," *Sebben*, 488 U.S. at 123, 109 S.Ct. at 425, the claimant can, and should, challenge the regulation administratively, giving the agency a chance to clean up its act before the courts intervene.[4]

▪ Applying these principles to this case, the composition of the plaintiff class must be modified as follows: claimants who allowed the time for challenging within the administrative scheme the denial of their benefits on the basis of the no-combination regulation to lapse before the class action suit was filed are barred from participating in the action. To this extent and for this reason the decision of the district court is reversed and the cause remanded. The district court is instructed to reconfigure the plaintiff class to exclude only those claimants with such lapsed claims. Those claimants who exhausted their remedies, as well as those claimants who still had an opportunity to do so at the time the class action was filed, remain in the plaintiff class.

**B. The 60–Day Limitation on Actions**

▪ Along with the requirement of exhaustion, 42 U.S.C. § 405(g) mandates that claimants seek judicial review of their claims within 60 days of receiving a final agency determination. As we stated in *Johnson I*, this 60–day limitation is not jurisdictional but "is waivable by the parties." 769 F.2d at 1209 (quoting *Eldridge*, 424 U.S. at 328 n. 9, 96 S.Ct. at 899 n. 9 (1976)). *See also Salfi*, 422 U.S. 749, 95 S.Ct. 2457. The 60–day limit of Section 405(g) is therefore merely a statute of limitations rather than a jurisdictional bar to the federal courts. *See Bolden for Bolden v. Bowen*, 868 F.2d 916, 919 (7th Cir.1989) (citing *City of New York*, 476 U.S. 467, 106

S.Ct. 2022); *Loyd v. Sullivan*, 882 F.2d 218, 219 (7th Cir.1989). *Cf. Irwin v. Veterans Administration*, — U.S. —, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling applies to Title VII time requirements).

The Federal Rules of Civil Procedure apply to actions under § 405(g). *See Yamasaki*, 442 U.S. at 698, 99 S.Ct. at 2556. Thus, the Secretary must raise this 60–day statute of limitations in a responsive pleading as an affirmative defense or it will be considered waived. *See* Fed.R.Civ.P. 8(c) & 12(h)(1). The district court determined that because the Secretary did not raise the statute of limitations in its original answer, this defense had been waived. 607 F.Supp. at 877–78. We affirmed this waiver determination in *Johnson I*, 769 F.2d at 1209. We see no basis for reversing this holding.[5] The Secretary did not raise this defense in a timely fashion, and therefore, under the Federal Rules, the statute of limitations must be considered waived. *See* 5 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Civil* § 1278 (1984).

**V. THE PROPER SCOPE OF REDETERMINATION HEARINGS**

▪ Finally, the Secretary challenges the district court's order to redetermine each individual plaintiff's eligibility for benefits from the date of denial up through the present date. *See* 714 F.Supp. at 1478–81. Relying substantially on Judge Moran's analysis in the Relief Order in *Marcus v. Bowen*, No. 85 C 453, slip op. at 7–10 (N.D.Ill. April 18, 1989) [available on WESTLAW at 1989 WL 39709], Judge Bua held that, under the Secretary's regulations, the claimants in the *Johnson* class have not yet received a final determination on their claims, as each claimant's initial denial of benefits rested on a regulation

---

4. *State of New York v. Sullivan*, 906 F.2d 910 (2d Cir.1990), is a case in which the *City of New York* analysis is applied and judicial waiver of the administrative exhaustion requirement is found. *Id.* at 917–18. As the court's discussion makes clear, however, *see id.* at 915 & 917, *State of New York* is also a case in which the Secretary failed to publish the challenged rules, and therefore exhaustion of administrative remedies would have been a "pointless exercise." *Id.* at 918.

5. The Secretary cites to the discussion of equitable tolling of the statute in *City of New York* and *Sebben* and the narrow reach of such an equitable remedy. We do not dispute the validity of such a reading of these cases. In this case, however, we are concerned with *waiver* of the statute of limitations, not equitable tolling. Thus, the cases and passages cited for the narrow reach of equitable tolling are inapposite.

that has been invalidated. Thus, Judge Bua concluded, each claimant could receive retroactive benefits from the date of disability even if his current disability occurred *after* the original denial of benefits, despite failing to file a second application for benefits with the Secretary. 714 F.Supp. at 1480. The Secretary challenges that decision, arguing that only the original denial of benefits should be reviewed under the new standard. Any subsequent disability, under the Secretary's reading, would entitle the claimant to benefits only if a new application was filed, and eligibility for such benefits would begin with the filing of the second claim.

Because the district court's construction of the applicable regulations is a decision of law, we will review this matter *de novo*. See *Airline Pilots Ass'n v. UAL Corp.*, 874 F.2d 439, 448 (7th Cir.1989) (district judge's ruling on the law given "weight [that] it intrinsically deserves (which is the same weight we would give to a treatise or a law review article)"). Such a review has convinced us that the interpretation of the applicable regulations concerning the proper scope of the redetermination hearings that was undertaken by Judge Moran in *Marcus* and Judge Bua in this case is indeed correct.

Under 20 C.F.R. §§ 404.620 & 416.330, the class claimants' *initial* applications for benefits under Title II or Title XVI of the Social Security Act remained in effect until they received a final administrative determination or, if there was a hearing on the claim, until the hearing decision was issued. Way back in 1984, Judge Bua entered summary judgment invalidating the no-combination policy and remanding class plaintiff's claims to the pre-hearing (and non-final) level for redetermination. *See* 593 F.Supp. 375. No class plaintiff has yet to receive a final redetermination. Thus, under the strict terms of the Secretary's regulations, the plaintiffs' initial applications remain "in effect," and each of these plaintiffs must be awarded retroactive benefits for any disability occurring after the date of application.

The Secretary contends that such a strict reading of the regulations is unfair given the extraordinary circumstances of this class action and the breadth of the redeterminations required. These regulations, he argues, were designed for plaintiffs who had exhausted their administrative remedies, not those whose exhaustion requirement was judicially waived. The Secretary, however, offers no authority for this proposition, which is neither compelling (ALJ's frequently make comprehensive redeterminations of large groups of plaintiffs' claims following a remand from a district court), nor relevant any longer, given that the plaintiff class now includes no claimants whose exhaustion requirement has been judicially waived.

Furthermore, the scope of the district court's redetermination order will not provide a windfall to the remaining members of the plaintiff class, as the Secretary suggests. Once this class action began, each member of the plaintiff class who had not abandoned his claim had a reasonable expectation that his claim would be satisfied by this litigation. *See MacDonald v. Secretary of Health and Human Services*, 834 F.2d 1085 at 1093 (1st Cir.1987). Such reliance was well-placed. We do not encourage meaningless, repetitive applications for benefits while final determinations are still pending. Thus, during the pendency of this litigation, the individual plaintiffs, regardless of the worsening of their condition, were still awaiting the determination of their benefits under 20 CFR §§ 404.620 & 416.330. Finally, as we state above, each plaintiff's initial application for benefits satisfied the jurisdictional requirement of filing mandated by the Supreme Court in *City of New York, Eldridge* and *Salfi*. This application also satisfies the requirements for benefits on redetermination as well. Thus, the Secretary's contention that the district court somehow has waived the jurisdiction for determination of after-occurring disabilities is mistaken.

The individual members of the reconfigured plaintiff class reasonably could have relied on the plain language of the Secretary's regulations and the pendency of the class action suit. Thus, their applications are still awaiting final action for purposes of §§ 404.620 & 416.330. The district court

properly held that the redetermination hearings must consider any subsequent disability and award retroactive benefits accordingly.

## VI. CONCLUSION

The Secretary's policy of refusing to consider the combined effects of non-severe impairments contradicted the plain language of the Social Security Act. The district court, therefore, properly invalidated the use of the no-combination regulation, and certain of the plaintiffs in this action are each entitled to a redetermination of their claims for benefits with consideration of the combined effects of their impairments. The class of claimants who are entitled to redetermination includes all claimants who exhausted their remedies within the Social Security scheme, as well as all claimants for whom the time to pursue such remedies had not lapsed before the class action suit was filed. The 60–day statute of limitations shall not apply. Moreover, because these qualified claimants' applications for benefits have not yet received final agency determinations, the scope of the redetermination hearings shall include consideration of any after-occurring disability, and retroactive benefits should be awarded where appropriate, whether or not the individual plaintiff has filed a subsequent application.

We agree with the district court that "many of the plaintiffs have waited several years to receive a fair hearing on their disability claims. They should not have to wait any longer." 697 F.Supp. at 354. The implementation of relief for those who qualify must begin and begin immediately. The decision of the district court is

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART, WITH INSTRUCTIONS.

## ORDER

March 20, 1991.

Counsel for Defendant–Appellant Sullivan filed a petition for rehearing and suggestion for rehearing en banc in the above-entitled case on February 11, 1991. The petition argues that, in our en banc opinion of December 28, 1990, we failed to decide whether persons who still had timely administrative claims pending before the Secretary at the time that the class-action complaint was filed are eligible for inclusion in the class action. In fact, we decided this issue in favor of those claimants: "Those claimants who exhausted their remedies, *as well as those claimants who still had an opportunity to do so at the time the class action was filed,* remain in the plaintiff class." Op. at 355 (emphasis added). *See also id.* at 357: "The individual members of the reconfigured plaintiff class reasonably could have relied on the plain language of the Secretary's regulations and the pendency of the class action suit. Thus, their applications are still awaiting final action...."

All of the judges on the en banc panel have voted to deny the petition for rehearing and suggestion for rehearing en banc. Accordingly, it is hereby ordered that the aforementioned petition and suggestion be, and the same hereby is, DENIED.